KERLIN v. SWART.

1. INNKEEPERS—PROPERTY OF GUESTS—LOSS—ACTION—EVIDENCE —CUSTOM.

In an action against an innkeeper, under section 5316, 2 Comp. Laws, for the value of property stolen from a guest, it is proper to permit witnesses accustomed to traveling to state that it is customary for guests at hotels of the class of defendant's to take such property as that in question to their rooms.

2. SAME—ARGUMENT OF COUNSEL—PREJUDICE.

For counsel to state in argument that the jury know that when a robbery is committed in a house, nine times out of ten the person who does it is an employé or agent of the house, is improper, but is *held*, not prejudicial in view of testimony indicating the culpability of the servants.

3. SAME—INSTRUCTIONS—CARE REQUIRED OF GUEST.

It appearing that the room had been entered a few weeks before, and defendant claiming that plaintiff was negligent in leaving his window near a fire escape open, it was proper for the court in his charge to state that the failure of defendant to inform plaintiff of the previous robbery might be considered in determining whether plaintiff was reasonably prudent.

Error to Wayne; Frazer, J. Submitted February 7, 1906. (Docket No. 101.) Decided March 5, 1906.

Case by Fentriss G. Kerlin against James H. Swart and William C. Swart, copartners as Swart Brothers, to recover damages for the loss of certain personal property by theft while a guest in defendants' hotel. There was judgment for plaintiff, and defendants bring error. Affirmed.

*James McNamara* and *Frank C. Cook*, for appellants.

*Emmons & Helfman*, for appellee.

HOOKER, J. The defendants are hotel keepers in Detroit; their house, the Cadillac, being a large hotel several stories high. The plaintiff, while a guest, lost prop-

erty worth several hundred dollars by theft; it being taken from his room at night, while he was asleep. The discovery was made through a night watchman, who, while making his rounds, found his door into the hall open, and awakened the plaintiff and asked him to ascertain whether he had lost anything. He did so, missing a watch valued $100, chain $22, locket and charm $25, knife $4.50, sleeve buttons $12, money $24.75, diamond pin $250, a total of $438.25. There was a fire escape at his window, and a door between the room occupied by him and that next to it. He went to sleep with the upper half of the window down, and the corresponding inside shutters open for ventilation. This action was brought to recover the amount lost, and resulted in a judgment for the plaintiff. Defendants have appealed.

The action was brought under the provisions of section 5316 of the Compiled Laws, reading as follows:

"That hereafter every landlord or keeper of a public inn or hotel in this State, who shall constantly have in his inn or hotel an iron safe, in good order, and suitable for the safe custody of money, jewelry or other valuable articles belonging to his guests or customers, and shall keep posted conspicuously at the office, and on the inside of every entrance door of every public, sleeping, bar, reading, sitting, and parlor room of his inn or hotel, notices to his guests and customers that they must leave money, jewelry and other valuables with the landlord, his agent, or clerk, for safe-keeping; that he may make safe deposits of the same in the place required for that purpose; shall not be liable for any money, jewelry, or other valuables of gold or silver, or rare and precious stones, that may be lost, if the same is not delivered to said landlord, hotel, or inn keeper, his agent or clerk, for deposit, unless such loss shall occur by the hand or through the negligence of the landlord, or by a clerk, or a servant employed by him in such hotel or inn: *Provided*, That nothing herein contained shall apply to such amount of money and valuables as is usual, common, and prudent for any such guest to retain in his room or about his person."

It was admitted that the safe and notices required were provided, and that the latter were properly posted. The

plaintiff sought to excuse his failure to leave his valuables with the clerk by proof that it "was usual, common, and prudent" for guests to retain such valuables in his rooms. There was testimony that it would have been easy for a person to enter from the fire escape, inasmuch as plaintiff left his windows open, and we do not find this testimony disputed. The door between the rooms was opened, and plaintiff's trunk, which he had placed against it, was moved to one side. The outer door opening from the hall was found ajar by the watchman, according to his testimony. Both doors had locks which were under the control of the plaintiff, and which were found in good condition. Counsel for the plaintiff contended that the larceny must have been committed by an employé of the defendants, while defendants claimed that if the doors were locked, as plaintiff testified that they were, it must have been the act of an outsider, who entered over the fire escape from an adjoining building from which it was readily accessible at the platform in front of the window. It is not denied that the determination of these questions was for the jury; but defendants' counsel complain of the introduction of certain testimony, which they say was inadmissible, of arguments of counsel alleged to have been improper, and of the charge of the court.

1. One Boling testified that he thought it "the usual thing for travelers to take their watch and little money they might have, stick pins, and things of that nature to their rooms," and he had "never heard of anything different," and that it was "usual and customary for a person having an article of personal wearing apparel, stud, or ring to keep it in his sleeping room overnight." D. R. Parsons testified as follows:

"I live in Detroit, and am assistant manager of the traveling service department of Parke, Davis & Co. I travel on the road, and have stopped at hotels of the character and standard of the Cadillac. From my experience and observation I think it is prudent for travelers at hotels of this character to keep a watch of the value of $100 in

their room at night; also a chain and charm of the value of $45, and a pair of sleeve buttons in cuffs of the value of $12, and a diamond pin of the value of $250.

" Q. I wish you would state as to the articles of jewelry of substantially these value, whether they are rings or pins, stick pins, whatever they may be, and worn for personal apparel, whether it is usual and customary for prudent travelers in this class of hotel to keep such articles as that in their rooms at night when they are asleep ? (Objected to by defendants. Objection overruled. Exception.)

" A. Yes; I think it is usual and customary."

Cross-examination:

" Q. Have you ever seen people leave a $250 diamond pin on a dresser ?

" A. I do not know that the pins I have seen them wear were diamonds. I have seen them have jewelry, going up when I have gone up to my room when other have done. I have never noticed them deposit it in a safe. I never roomed with traveling men, and therefore would not be able to see, and I do not know of any particular instance of leaving a $250 pin on a dresser. I have never observed any traveling men going to bed and leaving it on there, because I never roomed with traveling men. * * * ·I have seen travelers go up to their rooms with their jewelry at night-time, when they were ready to retire."

Fred Ranney testified:

" I live in Detroit, and am in the real estate business and other enterprises, have traveled extensively over the country, stopped at hotels of the character of the Cadillac, have observed other travelers at similar hotels. From my experience and observation of hotels of this character, I think a prudent traveler, customarily and usually, would keep in his room at night, when he is sleeping there, a Swiss movement watch of the value of $100; also a chain and charm of the value of substantially $45 or $50, pin or stud for his tie or shirt, with a diamond of the value of $250, a pair of sleeve buttons of the value of $12 and $25 in money. * * * I have never been on the road traveling, and don't know what is usual and customary for traveling men to do on the road, except from my observation. I am not a traveling man myself.

"*The Court:* Other people have a right to stop at hotels beside traveling men.

"I have never had a $250 diamond pin myself. I have a watch worth $100, and have never seen a traveling man leave a diamond pin of that value in a hotel. I have seen people do it, but not traveling men. I have seen my wife do so at various places—Murray Hill Hotel, N. Y.

"*Q.* And that is the observation that you are testifying to?

"*A.* Yes, sir. You asked me the question, and that is the only one I have ever observed leaving a valuable pin.

"*Q.* Your own wife; and you were with her?

"*A.* Yes, sir."

Charles Chadwick testified:

"I live in Detroit, but was at one time employed in New York City in the Grand Union Hotel as clerk. Being such clerk, I had opportunities for seeing travelers who came and stayed at that hotel. I was clerk for a year and a half. In a way the Grand Union Hotel is in the same grade with the Cadillac. It is considered a first-class hotel.

"*Q.* I wish you would tell the jury from your experience as a clerk in that hotel whether it is usual and customary for travelers stopping there overnight to keep in their rooms such an article as a watch valued at $100 during the night, while they were sleeping in their rooms. (Objected to. Objection overruled. Exception for the defendants.)

"*A.* Yes, sir; it is customary.

"*Q.* While you were clerk there, did you know of any traveling man staying at that hotel having a watch of that character and placing it in the safe? (Objected to. Objection overruled. Exception.)

"*A.* No, sir."

Counsel say that this testimony does not show a general custom, and that opinion evidence of a general custom is inadmissible. It was for the jury to determine whether these valuables were such as it was usual, common, and prudent for guests to retain in their rooms. The observation of persons in the habit of traveling and of hotel clerks, both of which classes would be likely to know what travelers commonly did, is competent. A witness who says that he frequently saw travelers take such valuables to

their rooms on retiring, and seldom, if ever, saw them deposit the same at the office, gives testimony tending to prove the general usage. Such testimony is not the mere statement of an opinion as to what the custom is, though the indication of an opinion is perhaps unavoidable. The testimony is admissible as tending to prove the practice, and is not to be excluded because of danger that a jury will conclude therefrom that the witness has an opinion that such facts seem to justify. This testimony squares with the rule cited by counsel, viz. :

"So, where the question at issue is the practice or usage with reference to a particular trade or business, it is for the judge to decide, as a preliminary question, whether the evidence tendered upon the question is evidence of the fact of a general usage or practice prevailing in the particular trade or business, or merely the judgment or opinion of the witness. If the latter, he must reject it, as that furnishes no safe guide for interpretation." 1 Thompson on Trials, § 336.

This was not "proof of particular instances, or of what was done by a few individuals."

2. In his final argument counsel said :

"*Mr. Emmons:* You, gentlemen of the jury, know that, if a robbery is committed in a house, nine times out of ten the person who did it is a servant or agent in the house. (To which argument defendants objected and took an exception.)"

This was an uncalled for and improper statement, but in view of the testimony indicating the culpability of the servants we are not satisfied that we should reverse the case upon that ground.

3. The plaintiff testified that:

"William Swart told me that there had been five robberies in the rooms of the hotel, including mine, since the 1st day of January. He said they had discharged several employés, one valet, and a colored fellow that they had identified pawning some stuff. The first intimation I had that a robbery had occurred in my room a month previous was when I went down to ask for a key of the room.

They said they had not any. I said: ' You usually have two keys to a room. Where is that ? ' He said that was carried off when the room was robbed before. I said: ' When was that ? ' He said: ' Two or three weeks ago.' The clerk told me that; they had not a key because the key had been carried off; that those rooms had been robbed a short time before and the key had been carried off. It looked very much to me as if the fellow who took the key had used it to get into my room.''

The court alluded to this testimony in his charge as follows:

'' Another proposition is presented to you here, and that is whether the innkeeper himself has been guilty of negligence, in that he did not inform the guest that this room was robbed before. I leave that for you to say, whether if this room had been robbed before, whether he did or did not inform the guest of that fact, so that, knowing the fact that robberies had been perpetrated, the guest would not have been put on his guard, as an additional danger to which he was subjected in that very room. That is a proposition for you to say. If that other robbery had been committed in a similar way, and the man had entered through the fire escape in the other case, and the doors had been all locked and the necessary precautions taken, I leave it for you to say whether the landlord ought not to have informed his guest of the additional danger he was subjected to in sleeping in a room that had been robbed before, so that he could have provided against it.''

If the defendants knew the condition of the fire escape, as it must be presumed that they did, and the plaintiff did not, as seems probable, they owed it to him to protect him from its dangers, by seeing that they were made known to him, thereby apprising him that more than ordinary care was required, unless such dangers were obvious. The fact that there had been an entrance there would have been unimportant, had the caution been given in another way, but, on the other hand, information of the theft would have tended to produce the effect of adequate care. As the defendants were insisting that the thief entered through the window, and that it was made possible by the neglect of plaintiff to fasten it, it was

proper for him to excuse his failure to lock the window by saying that he had no occasion to resort to unusual and apparently unnecessary precautions.

The learned circuit judge had just given the jury to understand that care was required of the plaintiff, by the following:

" A question arises as to how this robbery was committed. That is only material in determining whether it was committed by one class of these persons or the other. I think a man when he enters a hotel cannot throw off an invitation for people to rob him; that is, he cannot disregard all the precautions that the innkeeper has provided for his protection—that is, suppose he is on the ground floor of a hotel, and he leaves his window open, and a stranger, somebody, a stranger, enters from the outside, there is no sense in holding the innkeeper liable at all. In this case it is plain that all precautions were taken by the hotel keeper that were essential to protect this man against robbery. In other words, that they had furnished the door with perfect adjustable locks, so that, when locked upon the inside, it could not be opened from the outside, and when locked on the outside it could not be opened from the inside; there being two independent bolts. It seems that these gentlemen did all in their power to protect their guests as far as that door and locks were concerned, and that it was the duty of that man to lock them, and to take some interest to look after his property. It is claimed here that that door was locked, but it is claimed he was negligent in leaving a window partially open. As to the charge of negligence here, it depends upon the circumstances as to whether he was negligent or not, whether it would have been his duty to have seen that there was a fire escape out of the window there, and whether people could enter from the adjoining building, whether that would be a usual and a prudent thing for a man to do when a man is usually careful and prudent in looking after his own property. I leave that for you to say, and even then you must find such negligence as men of ordinary care would not have been guilty of; so that if this man is a stranger and enters from the outside, and the guest there could have prohibited it by ordinary caution, it would have been his duty to exercise that ordinary caution."

He followed it with the language complained of. It was proper for him to refer to the fact as a reason for not requiring extraordinary care, or such as the actual (but unknown) conditions demanded. He might have made a more pointed application of the language, by limiting it as above, but he could not well have been misunderstood.

The judgment is affirmed.

BLAIR, MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.