### WEADOCK *v.* SWART.

1. INNKEEPERS—NEGLIGENCE — LOSS OF PROPERTY — SUFFICIENCY OF LOCK—STATUTE.

  Under the statute limiting the liability of hotelkeepers for the loss of property of their guests (Act No. 42, Pub. Acts 1905), the question of the suitability of the lock on the door of plaintiff, who occupied a room with another, and whose watch and charm were stolen, while, as plaintiff claimed, the other guest was absent from the room, was for the jury, upon a record which showed there was only one key for the lock and the guest who left the room, did not lock the door.

2. SAME—GUEST AT HOTEL—WATCH AND CHAIN.

  A gold watch and chain in habitual use by a guest are not jewelry, or personal ornaments, or articles of gold and silver manufacture, within the intent of Act No. 42, Pub. Acts 1905, limiting the liability of innkeepers who maintain a safe or vault for the deposit of articles of the character described, when the guest shall not offer to deliver the articles for custody in the safe or vault.[1]   Per MOORE, BIRD, and STONE, JJ.

---

[1] As to effect of statute limiting innkeeper's liability for goods not delivered into his custody, see note to *Brewer* v. *Caswell* (Ga.), 23 L. R. A. (N. S.) 1107.

Error to Wayne; Donovan, J. Submitted October 28, 1910. (Docket No. 159.) Decided December 7, 1910.

Case by John C. Weadock against James H. Swart and William C. Swart for the loss of valuables at defendants' hotel. A judgment for defendants on verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

*Thomas A. E. Weadock*, for appellant.

*James McNamara*, for appellees.

MOORE, J. Plaintiff was a guest at the hotel of defendants, and was assigned to a room with Mr. Loranger, also a guest, who was recovering from an illness, and both desired to have beds in the same room. Plaintiff carried a gold watch and chain valued by him at $120, a diamond-studded Elk watch charm, which had been presented to him about five years before by the Elks, which cost $200, and $12 in money. There was only one key to the room, as the clerk of the hotel informed plaintiff when the room was assigned. Before retiring plaintiff called a uniformed messenger boy, to whom he gave his trousers to be pressed. He was to return them at 7 o'clock next morning. The tailor was employed by the hotel. Plaintiff's recollection is that the room door had an ordinary single lock. Next morning plaintiff was partially awakened by Mr. Loranger taking a bath, but went to sleep again. He was awakened later by a rapping on the door, which he opened. The boy handed in the trousers, and when plaintiff reached into his hat on the dresser for his watch which he had put there the night before, the watch, chain, charm and money were gone. These articles were usually carried by plaintiff by day and kept in his room at night, and the amount of money was less than he ordinarily carried. Mr. Loranger arose before Mr. Weadock, and, unlocking the door, left the room for a short walk in the street. When he returned the door was closed. Mr.

Weadock asked him if he had seen anything of his watch and money. He said no, and testified on the trial that he did not take them. Mr. Loranger's watch and money were not taken.

Defendants offered testimony of several witnesses contradicting the testimony as to the condition and kind of locks on the door, and the value of the property stolen. They offered evidence that they kept an iron safe in the hotel office, and had notices posted of the fact, and that plaintiff's watch, chain, charm, and money were not offered by him to be placed therein for safe-keeping. Mr. William Swart testified that out of two to three hundred guests in the hotel, four to a dozen valuable watches would be placed in the safe by the clerks. There was no fire escape near the windows of the room. The defense relied upon the statute, Act No. 42, Pub. Acts 1905, as a complete defense to the action. The court agreed with the defendants and directed a verdict for defendants.

Act No. 42, Pub. Acts 1905, provides in part as follows:

"SEC. 2. No innkeeper whether individual, partnership or corporation, who constantly has in his inn a metal safe or suitable vault in good order, and fit for the custody of money, bank-notes, jewelry, articles of gold and silver manufacture, precious stones, personal ornaments, railroad mileage books or tickets, negotiable or valuable papers and bullion, and who keeps on the door of the sleeping rooms used by his guests suitable locks and bolts, etc., * * * shall be liable for the loss of or injury to any such property belonging to any guest, unless such guest has offered to deliver the same to such innkeeper for custody in such metal safe or vault."

Mr. Swart in his testimony describes the lock as:

" * * * A double lock. It is just the same as if you put two locks on a door—a lock for the outside and a lock for the inside of the door. * * * When the door is locked from the inside, there is no way to open it from the outside at all. No one with skeleton keys can open it. * * * The locks have independent bolts. * * * It would be impossible for a man inside to get out. * * * I remember Mr. Loranger testifying that he arose before

Mr. Weadock the next morning and went out. , If that door was locked, he would have to unlock it from the inside. He would have to take his key on account of the lock being independent and lock it from the outside, or else wake up the other gentleman and have him lock it from the inside. If he went out and locked it from the outside, the gentleman inside could not get out. * * *"

The appellant insists upon two propositions: *First*, that the question of whether there were suitable locks and bolts upon the door presented a question of fact for the jury, and, *second*, that the statute does not include a watch and chain in habitual use by the guest.

As to the first of these propositions: The recollection of the plaintiff and the defendant who was sworn, differs as to the character of the fastening. It is clear the term "locks," as used in the statute, is broad enough to include the key or keys that go with the lock or locks. A lock without a key would not comply with the requirement of the statute. The clerk knew the room was to be occupied by two guests who occupied separate beds. These guests might want to leave the room at separate times from each other. When inquiry was made of the clerk for the key or keys he informed the plaintiff there was but one key to the lock. In view of the situation, as shown by the record, we think the suitableness of the locks was not a question of law, but should have been submitted to the jury as a question of fact.

As to the second question, Were the watch and chain included in the statute? The defendants cite the case of *Lang* v. *Hotel Co.*, 12 Wkly. Law Bul. (Ohio) 250, as conclusive. This was an opinion rendered in the court of common pleas for Hamilton county, and is not entitled to as much weight as though it was a court of final resort. The learned judge contented himself with saying that if the watch and chain were not jewelry, they were articles of gold manufacture.

On the part of plaintiff many cases are cited, among them *Ramaley* v. *Leland*, 43 N. Y. 539 (3 Am. Rep. 728),

*Jones* v. *Hotel Latham Co.*, 62 Misc. Rep. 620 (115 N. Y. Supp. 1084), and *Kerlin* v. *Swart*, 143 Mich. 228 (106 N. W. 710), and it is said that the last-named case is conclusive in favor of the plaintiff. An examination of the cases cited by plaintiff shows that the statute under construction in each of them differed from the one now before us. The cases do settle, however, what is now conceded by counsel for defendants, that a watch and chain, in common use, are not "jewelry."

In the case of *Ramaley* v. *Leland, supra*, it was said:

"A watch is neither a jewel nor ornament, as these words are used and understood either in common parlance or by lexicographers. It is not used or carried as a jewel or ornament, but as a timepiece or chronometer, an article of ordinary wear by most travelers of every class, and of daily and hourly use by all. It is as useful and necessary to the guest in his room as out of it, in the night as the daytime."

Counsel for defendants argue (we quote from the brief):

"As the testimony in this case, given by the plaintiff, says his watch and chain were gold, it is not straining the English language much to say that they must, therefore, of necessity be of 'gold manufacture.' "

In *Ramaley* v. *Leland, supra*, the court said, in part:

"The statute permits a proprietor of a hotel to relieve himself from his strict common-law liability, in respect to certain classes of property, upon compliance with the prescribed conditions. But the exemption is limited to the particular species of property named, and, being in derogation of the common law, cannot be extended in its operation and effect by doubtful implication, so as to include property not fairly within the terms of the act. The rules of the common law touching the liability of innkeepers, common carriers, and the like, have not been relaxed by the courts and are in full force, except as expressly changed by statute, or as they may be modified by special contract. By statute, the proprietors of hotels may provide a place of safe-keeping of 'money, jewels, or ornaments' belonging to guests, and by so doing, and giving notice as directed, they are not liable 'for such money, jewels, or ornaments' by theft or otherwise. Certain property, par-

ticularly valuable in itself, taking but small space compared with its value for its safe-keeping, easy of concealment and removal, holding out great temptation to the dishonest, and not necessary to the comfort or convenience of the guest while in his room, is made the subject of the statutory exemption.  Property of a different description, including all that which is useful or necessary to the comfort and convenience of the guest, that which is usually carried and worn as a part of the ordinary apparel and outfit, or is ordinarily used, and is convenient for use by travelers as well in as out of their rooms, is left, as before the statute, at the risk of the innkeeper.  The words of the statute must be taken in their ordinary sense, in the absence of any indication that they were used either in a technical sense or a sense other than that in which they are popularly used."

Apply this rule to the statute before us.  Does the sentence, "articles of gold and silver manufacture," include a watch and chain?  It is common knowledge that the most important part of a watch, those parts which make it possible to keep time, are neither gold nor silver.  If the legislature had intended to include in the statute an article of such general and necessary use as a watch, we think it would have used the word "watch" instead of saying, "articles of gold and silver manufacture."

Judgment is reversed, and new trial ordered.

BIRD, C. J., and STONE, J., concurred with MOORE, J.

HOOKER, J.  I concur upon the ground that the question relating to the suitableness of the lock was a question for the jury.  On other questions I reserve my opinion.

OSTRANDER, J., concurred with HOOKER, J.