PEOPLE v. LAMBERT.

1. CRIMINAL LAW—ACCUSED AS WITNESS—CROSS-EXAMINATION.
    Where a person on trial for crime is a witness in his own defense, no harm results from asking him on cross-examination if this is the first time he has ever been in trouble, where he answers in the negative, and, in response to further questions, gives the circumstances of his former arrests and convictions.

2. SAME—FAILURE TO OBJECT.
    Complaint cannot be urged against questions asked of accused on cross-examination which were within a rule which counsel for accused suggested, and which were not objected to.

3. SAME—TRIAL—RAPE—ARGUMENT OF COUNSEL.
    In a trial for rape, reference to the respondent by the prosecut-

ing attorney as "this thing" and "this brute," while undignified, is not reversible misconduct, where the uncontradicted testimony indicates that, whether the intercourse was or was not consented to, the act itself was accomplished with such force, and the parts were left in such condition, that pain accompanied the coition, and respondent himself gives testimony which, in effect, is a self-characterization, little, if any, more favorable than that given to him by the prosecuting attorney.

4. RAPE—TRIAL—CHARGE.

In a prosecution for rape it is not error to refuse a requested instruction that, in respect to prosecutrix's resistance, the jury should consider the relative size and strength of the parties, where, though prosecutrix's weight is shown to be about 125 pounds, there is nothing to show their relative size or strength, and the jury are fully instructed as to the necessity of resistance to the uttermost, and that, irrespective of the force previously employed, if consent was in fact given, though never so reluctantly or tardily, the offense would not be rape.

5. SAME.

There is no merit in an objection to a phrase of the charge, "The people should be protected against such outrages if they have been perpetrated," where the sentence continues, "Every citizen should be protected against being convicted of such an outrage if he is not guilty of it," etc.

Error to Eaton; Smith, J. Submitted May 3, 1906. (Docket No. 154.) Decided July 3, 1906.

Bert Lambert was convicted of rape and sentenced to imprisonment for life in the State prison at Jackson. Affirmed.

*Frank A. Dean,* for appellant.

*Elmer N. Peters,* Prosecuting Attorney, for the people.

OSTRANDER, J. Respondent was convicted of the crime of rape and sentenced to prison for life. The prosecutrix was 16 years of age on May 5, 1904. The act of intercourse, which took place November 19, 1904, was admitted. The only disputed question was whether it was accomplished by force and against the will of the prosecutrix.

Upon this subject there was testimony which required the case to be submitted to the jury. The assignments of error which are relied upon relate:

(1) To alleged improper cross-examination of respondent; (2) to alleged intemperate language of the prosecuting attorney; (3) to the refusal of the court to give to the jury a requested instruction; (4) to alleged prejudicial language of the trial judge.

1. On the cross-examination of the respondent, the following occurred:

" *Q.* Is this the first time you have ever been in any trouble?

"*A.* No.

" *Mr. Nichols:* I object to it as incompetent. I ask that the question be stricken out.

" *The Court:* I don't know what you expect to follow it up with. You can introduce the record as you do any record of any witness to test his credibility.

" *Mr. Peters:* That is the purpose.

" *The Court:* It is for no other purpose except to test his credibility. The answer may stand.

" *Mr. Nichols:* Exception.

" *Q.* Have you been arrested before?

" *Mr. Nichols:* I object to it as irrelevant, incompetent, immaterial, and not proper.

" *The Court:* Answer. I will simply say to you, gentlemen [addressing the jury], this is to test the witness's credibility. He has taken the witness stand. He is like any witness. He can be inquired about those matters. Let the record show this is all taken under objection and exception.

" *Mr. Nichols:* You cannot show in testing the witness's credibility the fact of his having been arrested. If he has been convicted of any offense, that is to show that, but to ask if he has been arrested, I will submit that is. not proper.

" *The Court:* That is true.

" *Mr. Nichols:* That is the reason of my objection.

" *Q.* Were you ever convicted of any offense?

"*A.* Yes, sir. Once for riding a bicycle on a walk.

" *Q.* Any other offense?

"*A.* Yes; I guess one time at the Baird opera house, when I worked there. Mr. Baird had some copper down

cellar. There was some wire there that belonged to the city, and we took this copper he had there for our pay, and we thought this other city wire went along with it. We went and sold it, and they came after the wire and made a charge against us for larceny. I pleaded guilty to that. That is all I could do. I was convicted of another offense, larceny. Charged with larceny. I pleaded guilty. Was convicted at another time for fighting; pleaded guilty then. Have not been convicted of any other crime.

"Q. Are you positive that three times is all.

"The Court: He has testified to four times, including the bicycle.

"Mr. Peters: Yes; but I wouldn't regard the bicycle matter as very serious.

"Q. Are you in the habit of having sexual intercourse with women other than your wife?

"Mr. Nichols: I object to it as incompetent, irrelevant, and immaterial.

"The Court: I think I will sustain that objection."

It is pointed out in the brief that, while the prosecuting attorney claimed the testimony was called for to test the credibility of the witness, the use made of it is evidenced by the argument made to the jury, in which the following is some of the language used. Commenting first upon the testimony of the prosecutrix, and then upon that given by the respondent, the prosecuting attorney said:

"If ever I saw a picture of girlhood innocence, an innocent country girl, so to speak, not innocent, perhaps, that is not the right expression to use, but you remember when my brother put any question to her in any other language than she is capable of using, the language that educated men use, she was 'stumped.' She says, 'What do you mean?' He had to address her in plain talk that working people use. She didn't understand a word of more than three syllables hardly, but when a word was put to her in the language she was acquainted with or a question, so that she understood it, the answer came right straight, fair, and square, examined by a man of 25 years experience, a skilled lawyer and one of the best criminal lawyers in the county of Ingham; and yet he could not twist her or work her out of the true story not one particle. She stood that cross-examination marvelously. I

want to say to you there is one class of people in the world that can stand such a cross-examination, and that is the party who is telling the truth. Let them get away from it and such a man as Judge Nichols will trip them every time, unless it be such a man as this man, who has been in the criminal courts, tried and convicted, who has been through the mill, who stands ready if convicted to go to State's prison. That man lying over here in jail will sit down and he will commit to memory a story the devil himself couldn't break up as far as that is concerned, and yet what about it ?

'*Mr. Nichols:* Exception."

It is apparent that no harm was done in accepting the answer to the first question. As to the others which were answered, they were within a rule which counsel for respondent himself suggested and were not objected to.

2. In his opening argument to the jury, the prosecuting attorney used the following language, to which exceptions were taken:

"We have here a charge made by a young girl just past the age of 16 in which she charges this man here—this thing here—

"*Mr. Nichols* (interrupting): I take an exception to that remark.

"*Mr. Peters* (continuing):—with having with force and against her will violated her person on the 19th day of last November. * * * And yet that brute goes on that stand and tries to make you believe he left that woman in that condition and she kissed him while he did it. * * * A man that will do what that man did there is no place on earth that is safe for him except behind the prison bars, and I hope you will strengthen the thoughts in me that within three days that man will be where never again will he be given the least particle of an opportunity to ravish another innocent girl."

The uncontradicted testimony of physicians, added to the testimony of the respondent, indicated strongly that, whether the intercourse was or was not consented to, the act itself was accomplished with such force and the parts were left in such a condition that pain accompanied the coition. Respondent gave other testimony which in effect was a self-characterization, little, if any, more favorable

than that given to him by the prosecuting attorney. It would have been more dignified and more in keeping with official character if the prosecuting attorney had refrained from using some of the words which he did use. It cannot be said that the testimony, including that of respondent, did not in fact present respondent in the character ascribed to him. I think the case should not be reversed because of improper conduct of the prosecuting attorney.

3. The court was requested to say to the jury:

"It is not only your province, but your duty, in considering the question as to whether the complaining witness used all resistance possible for her to use to prevent the consummation of the act of intercourse, to take into consideration the relative size and strength of the complaining witness and the respondent."

The prosecutrix had testified that she thought she weighed 125 pounds without her wraps, but there is no testimony showing the relative size or probable strength of the parties. The court did instruct the jury that:

"To convict respondent, you must be satisfied beyond a reasonable doubt, which I will explain to you later on, that the intercourse was had by force and against the will of Miss Frever, and that she made the utmost resistance on her part to defend herself, and unless so proven you should acquit the respondent. Should you find from the proof in the case that for a time she objected, yet, if at the time the act of intercourse occurred, she consented thereto, then it would not be rape, no matter how reluctantly or tardily consent was given or how much force had been previously employed, if in the act itself she consented, then it would not be rape.

"Miss Frever claims she had been resisting for a long time and when the act was committed she was still resisting to the utmost, and submitted to it because she was overpowered; that she never consented; that she was taken out of the automobile by force and thrown on the ground and choked into submission. To this intercourse the respondent claims she finally consented, got out of the automobile willingly, and submitted to his sexual embraces without resistance.

"Now gentlemen, it is for you to decide—it is for you

to say where the truth is. He claims she consented. If she did, this offense for which he is on trial is not made out and respondent in such case should be acquitted. She claims she resisted to the utmost, and if she did and only ceased when overpowered by force or from not being able from want of strength to resist him any longer, then the offense is made out and he should be convicted."

In view of this instruction, it was not error to refuse to give the charge preferred.

4. The court further said to the jury:

"It is for you as conservators of the peace and the protectors of citizens to say in this case by your verdict where the truth is. The people should be protected against such outrages if they have been perpetrated."

It is said that this was harmful to respondent. The last phrase above quoted is the first phrase of a sentence which concludes:

"Every citizen should be protected against being convicted of such an outrage if he is not guilty of it; but jurors, as well as courts, should do their duty under their oaths in a case of this kind, and should take the testimony as it comes to them and comes into court and consider it as seriously and honestly, without fear and without impartiality, weigh where the truth is, no matter where it falls. That is what I want you to do in this case, gentlemen."

The objection made is without merit.

We have examined the record and briefs with great care, because the charge is a serious one, and the punishment inflicted is the extreme penalty of the law. It is made evident by the brief of counsel for respondent that it is hoped this court, after a survey of the entire record, will reach the conclusion that the guilt of respondent is doubtful and afford the relief of a new trial. The story which the prosecutrix told is both strong and weak, as evidence, both probable and improbable. The jury evidently believed her. We cannot say that her story was so improbable that a miscarriage of justice is plainly indicated.

The judgment is affirmed.

McAlvay, Blair, Montgomery, and Hooker, JJ., concurred.