PEOPLE v. FENNER.

1. BASTARDS—DUPLICATING LOST COMPLAINT.
     In bastardy proceedings under 2 Comp. Laws 1915, § 7753 et seq., where, after the jury had been sworn and the taking of testimony had commenced, it was disclosed that the written complaint of the prosecutrix was not attached to the return, and the examining magistrate testified that it was filed with him, but that when he came to make his return he was unable to find it, the trial court was not in error in permitting the filing of a complaint substantially identical with the original one, since such procedure is authorized by 3 Comp. Laws 1915, § 12264 et seq.

2. CONTINUANCE—DISCRETION OF COURT.
     In the absence of a proper showing for a continuance,

its denial was not an abuse of the discretion resting in the trial judge.

3. WITNESSES—CROSS-EXAMINATION—REASONABLE LIMITS.
In bastardy proceedings, where defendant was called as a witness in his own behalf, he was subject to the same rules of cross-examination as any other witness, and questions as to his frequenting houses of prostitution, asked for the purpose of affecting his credibility as a witness, did not exceed reasonable limits.

4. TRIAL—ARGUMENT OF PROSECUTOR—CURING ERROR.
Argument of the prosecuting attorney, which was partly legitimate and based on evidence, and partly unwarranted, which cannot be said to have harmed defendant, in view of the instruction of the trial court that the case must be decided upon the evidence, *held*, not reversible error.

Certiorari to Muskegon; Vanderwerp (John), J. Submitted October 13, 1921. (Docket No. 166.) Decided December 23, 1921.

Burrell Fenner was convicted of bastardy. Affirmed.

*Willard G. Turner, Jr.,* for appellant.

*Merlin Wiley,* Attorney General, *Harry W. Jackson,* Prosecuting Attorney, and *R. Glen Dunn,* Assistant Prosecuting Attorney, for the people.

STEERE, C. J. This is certiorari to review defendant's condemnation under the bastardy statute (2 Comp. Laws 1915, § 7753 *et seq.*). After the jury had been sworn and the taking of testimony had just commenced, defendant's counsel objected to any testimony being received because there was no written complaint of the prosecutrix. Examination of the files disclosed that no complaint was attached to the return and none was found in the files. The jury was excused and the examining magistrate was called. He testified that the written complaint was filed with

him but that when he came to make his return he was unable to find it.   He also produced his docket and its entries· showed the filing of a written complaint as the basis of the proceeding.   The court then permitted the filing of a complaint which the testimony showed was substantially identical with the one originally filed.   All this was done over objection of defendant's counsel.   There was no error in thus perfecting the record.   It was authorized by 3 Comp. Laws 1915, § 12264 *et seq.*

Defendant's counsel then asked for a continuance of the case.   No satisfactory showing was made to support such application and it was refused.   The granting or refusing of an application for continuance is a matter resting in the discretion of the trial judge. We do not perceive that such discretion has been abused.   See *People* v. *Jackzo,* 206 Mich. 183; *People* v. *Eamaus,* 207 Mich. 442; *Stevens* v. *N. Z. Graves Corp.,* 210 Mich. 585.

Defendant was called as a witness in his own behalf and was subjected to a searching cross-examination by the prosecuting attorney and was asked with reference to frequenting houses of prostitution.   This was manifestly for the purpose of affecting his credibility as a witness.   When the defendant became a witness for himself he submitted himself to the same rules of cross-examination as any other witness and was liable to be asked such questions as affected his ·credibility before the jury as would any other witness.   The questions asked were for this purpose and we do not think the trial judge allowed the cross-examination to exceed reasonable limits.

In the argument of the prosecuting attorney to the jury he said:

"This young fellow goes with this girl; he gets down to where he is going with her two or three times a

217 Mich.—16.

week, and then coming down there every night, he says, and then he goes away to the navy; and when he is in the navy down there at the Great Lakes Naval Training Station, the naval reserves, fighting the battle of the Great Lakes and cruising around South Clark street and out on the municipal pier, making desperate sorties on the Y. M. C. A., getting his hide full of pies and one thing another at the post canteen, if they had a post canteen down there and all those different things—

"*Mr. Turner:* Give me an exception.

"*Mr. Jackson:* This young man then gets the 'flu' and he had the 'flu.' He was pretty sick. His folks went over to visit him, and right here I want to say this about his people: He has got nice people, nice people. I haven't got a word to say against them. The only thing I have got for Mr. and Mrs. Fenner in this case is my heartiest sympathy. They go over to see him and they come back. They don't bring him back in a rough box or anything of that kind, and the boy stays down there at camp, and after many a battle our war scarred veteran makes an application for a discharge. On what ground? Now, you get this. He makes an application for release from active duty. Why? So that he can come home and help on the farm—not released by reason of any physical disability, not turned loose because he wasn't able to work, but turned loose because he was able to work."

This forensic effort is interesting. In style it is an incongruous medley of legitimate argument based on facts interspersed with extravagant rehearsal of feigned events which it would seem the dullest minded of the jurors who heard the evidence could understand were largely imaginary and hazarded for ornamental purposes. The question, however, which we are required to determine, is whether the use of such language constituted reversible error. In so far as the argument dealt with defendant's physical condition it was proper in view of his claim that due to a severe attack of the "flu" while at the naval station he was rendered physically and sexually incapable of coition.

There was also evidence his parents visited him, he was released to go home for work on the farm, and that he had kept company with the complaining witness. The balance of the quoted harangue is without evidential support. It is insisted that it is a "veritable tirade" against defendant, and more "particularly in connection with the naval reserve." It does not appear from anything in the record or from anything we may judicially know that the language used imputes anything discreditable in defendant's conduct when he was at the Great Lakes Training Station. Even if taken seriously and treated as an attack on the naval reserves it was more liable to harm the people's case than that of defendant. No body of men would more quickly resent an attack on any branch of the service in the late war than would a Michigan jury. The trial judge, we think, very carefully instructed the jury that the verdict must be based on the evidence and nothing else. He said:

"This case must be decided, gentlemen, like all other cases, upon the evidence in the case in the light of the instructions as to the law given you by the court. It must not be decided upon prejudice or sympathy either for or against the complainant or for or against this respondent, but upon the evidence given you from the witness stand, without fear or favor, and nothing else."

There were no further instructions requested. Can we say, in view of this instruction, and the convincing testimony in this record, that defendant was harmed by the use of this language, that the verdict is the result of prejudice, that the use of this language put reversible error in the case? In *People* v. *Conley*, 106 Mich. 424, Mr. Justice GRANT, speaking for the court, said:

"Courts of last resort will interfere by granting a new trial only in a case where the prosecuting attorney

has so clearly departed from the evidence and the line of legitimate argument that any reasonable person will conclude that the jury were prejudiced by it."

In *Driscoll* v. *People*, 47 Mich. 413, the language used by counsel in characterizing the testimony of a witness was exceedingly strong. Mr. Justice CAMPBELL, who wrote for the court, there said:

"As it was apparently within the proper range of the prosecution to insist before the jury that Fennell was a false witness, the matter became a question of good taste and not of law."

See, also, *People* v. *Winslow*, 39 Mich. 505; *People* v. *Lambert*, 144 Mich. 578; *Provost* v. *Brueck*, 110 Mich. 136; *People* v. *Tubbs*, 147 Mich. 1; *Kerlin* v. *Swart*, 143 Mich. 228.

We do not think that this argument brought into the case one of that class of errors which cannot be cured. We think it could be cured, and was cured, by the instructions of the trial judge which were sufficient in the absence of a request for further instructions on the subject. The record does not convince us that the verdict is the result of prejudice or passion, of heated argument, of vituperation, or of anything save the testimony.

Finding no reversible error, the condemnation of defendant will be affirmed.

MOORE, WIEST, STONE, CLARK, BIRD, and SHARPE, JJ., concurred. FELLOWS, J., did not sit.