PEOPLE v. BOSKE.

1. CRIMINAL LAW—TRIAL—MALICIOUS DESTRUCTION OF PROPERTY—
   MOTIVE—EVIDENCE—SUFFICIENCY.

   In a prosecution for the malicious destruction of fruit
   trees, where, although the evidence was entirely circum-
   stantial, there was testimony of remarks made by de-
   fendant which, if found true, gave room for an inference
   of motive within the field of disputed facts as well as
   other disputed circumstances in the case, upon the im-
   port of which, if found true, reasonable minds might
   honestly differ, the trial court properly refused to direct
   a verdict on the ground that there was total absence of
   testimony to show motive or otherwise tending to support
   the prosecution's theory of guilt.

2. SAME—ARGUMENT OF COUNSEL AS TO OPINION OF SHERIFF THAT
   ACCUSED WAS GUILTY ERRONEOUS.

   Argument by the prosecutor that the sheriff "knew that
   he had the guilty man," and on objection by defend-
   ant's counsel, the reply that "the jury will understand,
   and that is legitimate argument, that that was what the
   sheriff knew," followed by the court's ruling that "if the
   jury will understand it in that light, proceed with the
   argument," held, improper, since it gave room for the
   jury to understand that they might give consideration to
   the sheriff's opinion, while it was their duty to pass upon
   the facts and decide the question of guilt or innocence un-
   influenced by the opinions of others.

3. SAME—ACCUSED'S CHARACTER MAY NOT BE PUT IN ISSUE BY
   STATE—WITNESSES.

   An accused's character or reputation may not be put in
   issue by the State; nor may the prosecutor comment on
   the failure of accused to call witnesses to sustain his
   character unless his counsel is so indiscreet as to invite
   it by making assertions on the subject outside the record.

As to reversal of conviction because of unfair or irrelevant
argument or statements of facts by prosecuting attorney, see
note in 46 L. R. A. 641.

On comment by prosecuting attorney on failure of defendant
to produce witness as ground for reversal or new trial, see note
in 34 L. R. A. (N. S.) 811.

4. SAME — TRIAL — ARGUMENT OF COUNSEL — FAILURE TO CALL
CHARACTER WITNESSES.

> Prosecutor's comment, in his argument to the jury, that
> defendant had lived in the same township for 20 years
> and did not call any character witnesses to establish his
> good reputation, and, on counsel's objecting thereto, his
> claim that he had such right, followed by an expression
> of doubt by the trial judge as to the propriety of such
> argument, but finally sustaining the objection, with the
> statement that the jury would be cautioned not to pay
> any attention to the remarks of counsel on the subject
> *held*, reversible error, although the judge later charged
> the jury to ignore said remarks by counsel, where he
> failed to enlighten them as to the law on the subject.

Exceptions before judgment from Berrien; White
(Charles E.), J.    Submitted October 13, 1922.
(Docket No. 165.)    Decided December 5, 1922.

Herman Boske was convicted of the malicious destruction of certain fruit trees.    Reversed.

*John J. Sterling,* for appellant.

*Merlin Wiley,* Attorney General, *Charles W. Gore,* Prosecuting Attorney, and *George H. Bookwalter,* Assistant Prosecuting Attorney, for the people.

STEERE, J.    Defendant, Boske, was convicted in the circuit court of Berrien county under an information charging that he did, on or about January 25, 1922, "wilfully, maliciously and wantonly, and without cause, cut down, destroy, and otherwise injure" certain fruit trees growing on a farm owned by one Fred Hauck in the township of Sodus in said county.    The case is here for review on exceptions before sentence.    Defendant's assignments are directed to claimed errors in the charge of the court, improper argument by the prosecuting attorney, overruling defendant's motion for a directed verdict, and refusal to grant a new trial.

Boske was a married man 38 years of age who owned and lived upon a 40-acre farm about a half mile south of Sodus village in Sodus township, Berrien county, on the west side of a north and south highway directly opposite a 40-acre farm owned by Hauck, who was a married man 40 years of age living upon a 47-acre farm about a mile distant at the time of events involved here. The two men were of German birth but had lived in Sodus township and known each other for over 20 years. Both testified they never had any trouble and were always friendly, as were their wives, who visited each other in a social way from time to time.

In the spring of 1921, Hauck planted a portion of his 40 opposite Boske's farm to fruit trees. He set out a peach orchard of 250 trees in the southeasterly portion of the 40 back of the unoccupied house situated upon it and 70 apple trees in a field directly across the road from Boske's place. He visited these new orchards some time in December, 1921, and did some work around the trees. At that time he noticed nothing wrong with them. He again visited and examined them the following March when he discovered that the great majority of those small trees had been partly cut off an inch or more below the surface of the ground he had hilled up around them, of which he testified the cuts on the apple trees appeared as though made with pruning shears and on the peach trees by a small tree-trimming saw. He reported his discovery to the sheriff who went out to the place with him and investigated the situation.

Boske was engaged that day trimming grape vines some distance back of his house. When called to dinner by his wife he saw Hauck, the sheriff and a number of others had gathered in the field opposite his place and went over there to see what was going on, as he stated. While there he asked the sheriff,

whom he did not then know, what it was about.   The latter gave him an evasive answer to the effect that they were investigating what kind of fertilizer would improve that soil and after some further talk Boske returned to his place.   The sheriff soon went over to and catechized him on the subject, and before they separated accused him of the depredation they were investigating, advising him to try and settle the matter up with Hauck.   Boske stoutly denied any knowledge that the orchards had been cut or destroyed until the sheriff showed him what had been done, and stoutly protested his innocence.

Before accusing him of the offense the sheriff had discovered a small apple tree near the highway opposite Boske's house which had been injured by the branches of a large maple tree falling on it from the opposite side of the road the fall before.   The large maple was 3½ feet in diameter and proportionately tall.   Boske cut it down for wood with the assistance of two men the preceding November and tried to fall it upon his own land, but it went in the opposite direction across the road and its top reached to one of the small apple trees near the road, crushing it down.   Boske straightened it up and braced it with some sticks tied around with a piece of cloth.   When called there the following March the sheriff noticed this and on examination found the tree cut beneath the soil in like manner as the other apple trees.   When asked about it Boske related the circumstance of his falling the maple tree on it the fall before and fixing it up above the ground, but denied all previous knowledge of it or the other fruit trees being cut below the ground as related, and emotionally protested against the imputation that he was the offender.   He admitted neglecting to tell Hauck of the mishap, with the explanation that he expected to plant another tree in its place if it did not come out all right in the

spring.    His arrest and conviction for maliciously cutting and destroying the young orchards followed.

The evidence offered by the prosecution was entirely circumstantial.    No witness testified to seeing Boske in this orchard beyond the little tree he had ministered to until the day the sheriff was there. The testimony was undisputed that during the many years that he and Hauck had known each other their relations had always been friendly, with never any trouble between them or members of their families. Based upon this condition of the record, defendant's counsel first strenuously contended that there was no competent evidence to carry the question of malicious, wanton, and wilful destruction by him of Hauck's orchard to the jury, and their request for a directed verdict or, at least, their motion for a new trial on the ground that the verdict was against the great weight of evidence, should have been granted.    And further urge that prejudicial error entitling defendant to a new trial is shown under various assignments argued in counsel's brief.

We are not prepared to indorse counsel's contention that a verdict should have been directed because of total absence of testimony to show motive or otherwise tending to support the prosecution's theory of guilt. There was testimony, denied by defendant, of remarks made by him which, if found true, gave room for an inference of motive within the field of disputed facts as well as other disputed circumstances in the case, upon the import of which, if found true, reasonable minds might honestly differ.    As we are of opinion a new trial should be granted for other reasons, that feature of the case need not be further discussed.

In his argument to the jury counsel for the prosecution asserted that Bridgman, the sheriff, "knew that he had the guilty man," and, in reply to objection by defendant's counsel, said, "The jury will understand

and that is legitimate argument, that that was what George Bridgman knew," followed by the court's ruling that "if the jury will understand it in that light, proceed with the argument." This gave room for the jury to understand they might consider in their deliberations the fact that the sheriff knew he had the guilty man, or at least give consideration to the sheriff's opinion that he had. It was the duty of the jury to pass upon the facts and decide the question of guilt or innocence uninfluenced by the opinions of others. The import of such argument was an appeal for conviction on the opinion of the sheriff.

Upon the trial no character witnesses were called. In his closing argument to the jury counsel for the prosecution commented on the fact that defendant had lived in Sodus township 20 years and did not call any character witnesses to establish his good reputation. On counsel for defendant objecting and taking exception to the statement, the court said:

"Counsel for the people had a right to comment on the failure of defendant to call witnesses to testify to any material matter here in issue. * * * He is commenting on the failure of defendant to call witnesses to establish good reputation, as I understand it."

A controversy then followed in which counsel for the prosecution stated the comments were in reply to argument of defendant's counsel referring to his good character. This the latter emphatically challenged to the extent of saying of the statement "that is untrue," and on counsel for the prosecution's assertion in reply, "the law is, we have a right to comment on the failure," defendant's counsel was asked by the court if he claimed the prosecution "has no right to comment on the failure of the respondent to bring witnesses to show good character?" to which counsel replied, "I certainly do," and the court said, "Well, I am not

sure about that." After further expression of doubt the court finally sustained the objection, with the statement the jury would be cautioned not to pay any attention to the remarks of the counsel on the subject. In his charge the court left this issue of fact between counsel in the air and did not enlighten the jury upon the law of the subject but, "in view of what arose," charged them "there is no evidence in this case one way or the other as to respondent's character or reputation," followed by some remarks as to the controversy, concluding:

"If any remarks have been made to the jury, or argument, on the question of defendant's character or reputation, that should be ignored by the jury entirely."

It is a well-settled rule that an accused's character or reputation cannot be put in issue by the State and an equally well-settled corollary that the prosecutor may not comment on the failure to call witnesses to sustain his character, unless his counsel is so indiscreet as to invite it by making assertions on the subject outside the record. *People* v. *Oblaser,* 104 Mich. 579. And where such unprovoked comments are made by the prosecutor it was said in *People* v. *Evans,* 72 Mich. 367, 382: "The error was not cured by the court afterwards instructing the jury that they should not consider such argument." *Vide,* also, *Quinn* v. *People,* 123 Ill. 333 (15 N. E. 46). No inference can arise against an accused that he is guilty of the offense charged because he offers no evidence of his good character. In view of what occurred the jury should at least have been so instructed. The evidence on the part of the prosecution was entirely circumstantial, and all circumstances claimed to support the theory of guilt were urged by the defense as susceptible of an innocent construction. It was purely a case of inference as to the ultimate

fact. From the record we are impressed that this feature of the case involved prejudicial error militating against a fair and impartial trial of the accused.

Other errors complained of which might call for consideration are not likely to occur on a re-trial and need not be reviewed.

The verdict must be set aside and a new trial granted.

FELLOWS, C. J., and WIEST, McDONALD, CLARK, BIRD, SHARPE, and MOORE, JJ., concurred.