PEOPLE v. WATSON.
SAME v. KOSIBA.
SAME v. McCARTHY.
SAME v. FRANK.

1. Indictment and Information—Conspiracy—Venue—Amendment—Prejudice.

In prosecution for conspiracy to obstruct justice had in the circuit court of county, reversible error was not committed by trial court in failing to require an amendment to information so as to exclude that portion of the county over which the circuit court had no jurisdiction because exclusive jurisdiction as to criminal offenses committed within a city located within

such county was vested in recorder's court of such city in the absence of any showing that defendant was prejudiced by such failure (3 Comp. Laws 1929, §§ 16300, 17259, 17289).

2. SAME—AMENDMENT—PREJUDICE.

Under a statute vesting courts with power to amend indictments, any amendment not prejudicial to the rights of the accused may be allowed (3 Comp. Laws 1929, § 17290).

3. CRIMINAL LAW—VENUE—INSTRUCTIONS—EVIDENCE.

Instruction given by circuit court that jury would have to find that defendant conspirators had committed one or more overt acts in furtherance of the conspiracy within the county but outside of city located therein which had its own recorder's court with exclusive jurisdiction as to criminal offenses committed within its limits or that the circuit court would have no jurisdiction to try the alleged offense amply protected the rights of defendants where there was evidence that a part of the conspiracy took place in the county outside of the city.

4. CONSPIRACY—JURISDICTION—OVERT ACTS.

A court having jurisdiction of place where any overt acts in connection with a conspiracy to obstruct justice took place has jurisdiction to try defendants charged with such conspiracy.

5. VENUE—QUESTION FOR JURY.

The question of venue is a jury question where there is evidence to substantiate claim of people that overt acts were committed within the jurisdiction of the court.

6. CRIMINAL LAW—CONSPIRACY—MISTRIAL—REFERENCE TO PLEA OF GUILTY BY CODEFENDANT.

Denial of motion for mistrial in prosecution of many defendants for conspiracy to obstruct justice was not error where prosecutor in his opening statement made reference to other defendants named in the information as having pleaded guilty and court instructed jury that such reference did not affect the rights of defendants being tried nor overcome the presumption of their innocence and no further reference was made by prosecutor to fact that some defendants had pleaded guilty.

7. SAME—CONSPIRACY—PICTURE OF CODEFENDANT WHO HAD PLEADED GUILTY.

Introduction in evidence in prosecution for conspiracy to obstruct justice of picture of codefendant who had pleaded guilty did not constitute prejudicial error where introduced for purpose of identifying the person who received money

from one of the witnesses where fact that codefendant had pleaded guilty had been referred to during opening statement, jury was instructed to disregard such reference and no further reference was made to that fact during the trial.

8. SAME—REMARKS OF COUNSEL IN PRESENCE OF JURY.

Alleged inflammatory, prejudicial, and unwarranted statements by assistant attorney general in presence of jury before whom prosecution for conspiracy to obstruct justice was being tried did not warrant declaration of a mistrial where the statements appear to have been only mere irregularities which were not prejudicial to rights of persons prosecuted.

9. SAME—IRREGULARITIES—FAIR AND IMPARTIAL TRIAL.

On appeal from judgment of conviction of crime the test is not whether there were some irregularities in the trial but whether defendants had a fair and impartial trial (3 Comp. Laws 1929, § 17354).

10. SAME—REMARKS OF TRIAL COURT.

Remarks of trial court in prosecution for conspiracy to obstruct justice made when defendant's counsel interposed objections and claimed to have been unwarranted and prejudicial comments did not constitute prejudicial error where they do not appear to have been facetious or intended to belittle counsel.

11. SAME—OBJECTIONS—INFERENCES—INSTRUCTIONS.

In prosecution for conspiracy to obstruct justice wherein defendants were numerous and trial was lengthy, instruction that attorneys had a right to make objections in good faith and that inference they desired to withhold true facts was not to be drawn when objection was so made nor an unfavorable inference against either party drawn because of good-faith objections did not work prejudicially to interests of defendant.

12. SAME—CROSS-EXAMINATION—DISCRETION OF COURT.

Cross-examination on matters relevant to the issue in a prosecution for crime is a matter of right but the extent of it is a matter that rests in the sound discretion of the trial judge.

13. SAME — CROSS-EXAMINATION — RESTRICTION — DISCRETION        OF COURT.

Claimed restriction on cross-examination of witnesses relative to police activities and reports as to certain lotteries and gambling involved in prosecution for conspiracy to obstruct justice did not constitute an abuse of discretion on part of trial court.

14. SAME—SELF-INCRIMINATION—WITNESSES—DEFENDANT AS WIT-
NESS—WAIVER—CROSS-EXAMINATION—CREDIBILITY.

A witness, subpoenaed to testify in a criminal trial, can stand
upon his constitutional right and refuse to answer any ques-
tions which might tend to incriminate him but a defendant
who voluntarily takes the stand in his own defense thereby
waives such right and can be subjected to cross-examination
concerning the facts in the case and as affecting his credibil-
ity (Const. 1908, art. 2, § 16).

15. SAME—SELF-INCRIMINATION—WITNESSES—IMMUNITY.

While a witness who has been granted immunity may be required
to testify to any facts connected with the crime covered by
the immunity, he may stand upon his constitutional rights
and refuse to answer questions which might tend to incrimi-
nate him upon matters as to which he has not been granted
immunity (Const. 1908, art. 2, § 16).

16. SAME— SELF-INCRIMINATION— WITNESSES— IMMUNITY— OTHER
OFFENSES.

In prosecution for conspiracy to obstruct justice incident to
lotteries and other gambling activities it was not error for
trial judge to permit witness to refuse to answer questions
where the answers might tend to incriminate him and im-
munity previously granted in one-man grand jury proceeding
did not cover matters questioned (Const. 1908, art. 2, § 16;
3 Comp. Laws 1929, §§ 17217, 17218, 17220).

Appeal from Wayne; Pugsley (Earl C.), J., pre-
siding. Submitted October 14, 1943. (Docket No.
83, Calendar No. 42,089.) Decided December 29,
1943. Rehearing denied defendants Watson and
McCarthy February 24, 1944. Application for
certiorari to Supreme Court of Michigan denied by
Supreme Court of United States to defendant
Watson October 16, 1944.

Everett I. Watson, Peter Kosiba, John P.
McCarthy and George Frank were convicted of con-
spiracy to obstruct justice. Affirmed.

*Toy & Newman* and *Fred R. Walker,* for defend-
ant Watson.

*Fred R. Walker,* for defendants Kosiba, Mc-
Carthy and Frank.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Thomas A. Kenney* and *Daniel J. O'Hara,* Assistants Attorney General, for the people.

SHARPE, J. Defendant Everett I. Watson was tried, convicted and sentenced in the circuit court of Wayne county on the second count of an information which charged that on the 2d day of January, 1935, and on other times between that time and the 1st day of March, 1940, at the county of Wayne and State of Michigan, John W. Roxborough and others knowingly conspired, wilfully and corruptly to aid, assist and enable the setting up or promotion, management or drawing within the State of Michigan of a certain lottery or gift enterprise for money, commonly known as "policy" and/or "mutuel," "numbers" and "clearing house" contrary to the laws of the State of Michigan and the ordinances of the city of Detroit. The facts as shown by the record are amply stated in *People* v. *Roxborough, ante,* 575, to which reference is made.

Upon appeal, defendant urges that the information is void as it does not allege the venue of the offense within the territorial jurisdiction of the circuit court of Wayne county. It is the claim of defendant that 3 Comp. Laws 1929, § 16300 (Stat. Ann. § 27.3561), specifically provides that the recorder's court of Detroit has exclusive jurisdiction over offenses committed within the limits of the city of Detroit and that the Wayne circuit could not have jurisdiction over this portion of the county; that the circuit court of Wayne county has no jurisdiction to try criminal offenses committed within the corporate limits of the city of Detroit and that if the jurisdiction of the trial court is less than the entire county, the venue must be so alleged. In support of this theory defendant relies upon 3 Comp.

Laws 1929, § 17259 (Stat. Ann. § 28.985), which provides that the indictment or information shall contain:

"3. That the offense was committed in the county or within the jurisdiction of the court. But no verdict shall be set aside or a new trial granted by reason of failure to prove that the offense was so committed unless the accused have raised such question before the case is submitted to the jury."

This issue was raised before trial by defendant Watson in a motion to quash the information, but was denied by the trial court.

The prosecuting attorney presents the theory that the phrase "within the jurisdiction of the court" as found in 3 Comp. Laws 1929, § 17259 (Stat. Ann. § 28.985), has reference to courts of limited jurisdiction such as the recorder's court of Detroit and has no application to the Wayne circuit court, a court of general jurisdiction. If we subscribe to the theory advanced by defendant the information is indefinite and uncertain as it fails to exclude that portion of Wayne county over which the circuit court has no jurisdiction. There is no claim made that defendant was misled or that there was any doubt that the offense was committed in that portion of Wayne county over which the circuit court had jurisdiction. We call attention to 3 Comp. Laws 1929, § 17289 (Stat. Ann. § 28.1015), which provides:

"No indictment shall be quashed, set aside or dismissed for any one or more of the following defects; * * * (Third) That any uncertainty exists therein."

It is a generally accepted rule that under a statute vesting courts with power to amend indictments,* any amendment not prejudicial to the rights of the

* See 3 Comp. Laws 1929, § 17290 (Stat. Ann. § 28.1016).—Reporter.

accused may be allowed. See 7 A. L. R. 1516. In the absence of any showing that defendant was prejudiced by the failure of the trial court to require an amendment there is not reversible error.

Defendant urges that the trial court committed prejudicial error in his failure to give the following instruction:

"Under the charge as set forth in the information, I charge you that if you find that the alleged conspiracy, agreement or understanding was made and entered into in the city of Detroit, you must find all defendants not guilty, even though you may find that overt acts in furtherance of the alleged conspiracy were committed at some place or places in the county of Wayne, outside of the city of Detroit, because that is not the charge in this information."

The trial court gave the following instructions upon this subject:

"I further charge you as a matter of law that if you should find from the evidence that no overt act outside of the city of Detroit was committed in some part of Wayne county in furtherance of the conspiracy, it would then become your duty to render a verdict of not guilty in favor of all of the defendants, the reason for this instruction being that the circuit court of Wayne county, in which this case is now being tried would have no jurisdiction to try the alleged offense if the conspiracy as claimed and all acts in furtherance thereof were limited to the city of Detroit. Under such facts, the jurisdiction of the offense charged would be one for the recorder's court.

"I further charge you as a matter of law that this court, sitting as the circuit court of Wayne county, does have jurisdiction of the offense charged, even though the conspiracy as claimed may have been formed in the city of Detroit, if you find

that any overt act, whether the same be one or many, has been committed outside of the city limits of Detroit but inside of the county of Wayne, and in furtherance of the conspiracy, and it is the claim of the people that there were many of such overt acts in the county outside of the city of Detroit.''

The rule of establishing conspiracy within the jurisdiction of the court is settled in Michigan. In *People* v. *Pettijohn,* 283 Mich. 108, 114, defendant Pettijohn was tried and convicted in the recorder's court of the city of Detroit. There was evidence that a part of the conspiracy took place in the city of Detroit. We there said:

''An overt act in connection with the conspiracy thus took place in Detroit and defendants could have been tried by either the recorder's court for the city of Detroit or the Wayne circuit court.''

In *People* v. *Ranney,* 304 Mich. 315, the defendant was convicted of the crime of conspiracy to obstruct justice in Wayne county. We there said:

''In the case at bar the overt acts of defendants were committed in the city of Detroit, but such acts were only a part of the general conspiracy which was county wide in scope.''

We there held that the circuit court of Wayne county had jurisdiction to hear the cause.

In the case at bar there was evidence that a part of the conspiracy took place in Wayne county outside of the city of Detroit. The question of venue is a jury question. See *People* v. *Kongeal,* 212 Mich. 307. The instructions given by the trial court on this question amply protected the rights of defendant.

It is urged that the trial court was in error in denying the motions for a mistrial after the prose-

cuting attorney had stated to the jury that he intended to show that certain defendants had entered pleas of guilty to the information and in permitting the introduction of the picture of defendant, David Lester, who had pleaded guilty.

It appears that during the course of the opening statement, the prosecutor said:

"It is the claim of the people that at the original meeting back in 1935, when it was necessary for them to come across for the prosecutor's office, or quit business, that Rooster Hammonds attended these meetings, or this meeting, that took place at that time, and he participated in there, although he did not run a numbers house—he ran a policy house, he and his partner Roane—and those two men have appeared in this court under this information, and pleaded guilty under the first count in the information. That is likewise true of Weisberg and Cox that I neglected to say, they pleaded guilty to the first count. * * *

"The special squad was created. There was a big furor and the gold or brass hats, as they call them, the big boys in the police department, went out and staged a big raid on St. Antoine street and around various other places throughout the city along in the early part of September, and following that we find the creation of the McCarthy squad with John F. McCarthy, this defendant here, appearing as the head of it, and Aitken, Bess and Buck Kashazta and various other fellows that I will relate, McLean and Whalen and various others of the defendants seated here were members of that squad. So was young Fitzgerald. Young Fitzgerald will be here as a witness to tell you how that squad operated and how they were paid off. But more of that later.

"David Lester, named as a defendant in this case, was a member of that squad and he had pleaded guilty to both counts in the information in this court."

and that the picture of defendant David Lester was admitted in evidence over the objection of defendants' counsel. Whereupon defendants' counsel made a motion for a mistrial which was denied by the trial court.

The motion for a mistrial was made in the absence of the jury. Upon the return of the jury to the court room, the trial court instructed them as follows:

"Members of the jury, during the course of the opening statement made by Mr. O'Hara, reference has been made to certain other defendants who are not now here on trial. I charge you as a matter of law that any action taken or any statements made by any of the other defendants after the expiration of the time that it is alleged that this conspiracy existed is in no way binding upon any other defendant. The time alleged in this information covers a period from the 2d day of January, 1935, and the 1st day of March, 1940. If it should appear that since the filing of this information, action has been taken by any of the other defendants in their own behalf, that is binding only upon them and does not in any way affect the rights of the other defendants who are here on trial, and it should not be construed as in any way prejudicing them in this trial. Neither does it affect or overcome the presumption of their innocence which was explained to you on your *voir dire* examination."

It also appears that no further reference during the trial was made by the prosecutor to the fact that any of these defendants had pleaded guilty. It is to be noted that the reference to pleading guilty was not made as to any defendant on trial, but to others who had been charged jointly in the same information. In our opinion the error was corrected by the instruction given by the trial court. The trial court did not err in denying defendants' motion for a mistrial. See *People* v. *Babcock,* 301 Mich. 518,

nor was it error to admit in evidence the picture of David Lester. This picture was introduced for the purpose of identifying the person who received some money from witness Abram Nusholtz. No reference was made to the fact that David Lester had pleaded guilty to the information by the prosecutor during the trial of the cause. In our opinion, the introduction of the picture in evidence was not prejudicial error.

It is also urged that it was error to permit the assistant attorney general to make inflammatory, prejudicial, and unwarranted statements in the presence of the jury. The statements and remarks relied upon are in the record, but space will not permit their being incorporated in this opinion. We have examined them carefully. The trial of this case was, of necessity, lengthy, but a mistrial should not be declared in consequence of mere irregularities which are not prejudicial to the rights of the persons prosecuted.

In *People* v. *O'Hara*, 278 Mich. 281, 306, we said:

"The test is not whether there were some irregularities but instead did the defendants have a fair and impartial trial."

In our opinion, the statements and remarks complained of did not do violence to the rule above announced.

It is also urged that the trial court was in error in making unwarranted and prejudicial comments upon objections made by counsel for defendant. We have examined the errors complained of and are convinced that they were not facetious or intended to belittle counsel. They may not be considered within the rule announced in *People* v. *Tomczak*, 250 Mich. 679. The remarks so made did not constitute prejudicial error.

It is also urged that the failure of the trial judge to give the following instruction was prejudicial to defendants:

"I charge you that it is the duty of attorneys to make objections,, and that you are not to infer from the fact that they have done so that they desire to withhold from you the true facts of the case, nor are you permitted to draw any unfavorable inferences against any defendant on trial because his attorney has done so."

The trial judge did give the following instruction:

"I charge you that it is the right of attorneys to make objections, when it honestly appears to them that it is their duty to do so, and that you are not to infer from the fact that they have done so in good faith that they desire to withhold from you the true facts of the case, nor are you permitted to draw any unfavorable inference against either the people or a party defendant on trial because such objections have been made in good faith."

In our opinion the charge as given amply covered the subject. It worked no prejudice to the interests of defendant.

Defendant claims that he was unduly restricted in the cross-examination of certain witnesses in that the prosecutor was permitted to inquire into police activities and reports, while the defense was limited to and refused the right to show that these same activities and reports existed at times other than that period of time covered by the information and that defendant was restricted and denied the right to show why number operators made payments to Sam Block as well as the manner of reporting and recording these activities by the Detroit police department. We have in mind that cross-examination on matters relevant to the issue is a matter of right

and that the extent of it is a matter that rests in the sound discretion of the trial judge. We have examined the claims made by defendant and cannot say there was an abuse of discretion upon the part of the trial judge in the limits he placed upon defendant's counsel during the cross-examination of the mentioned witnesses.

It is urged that it was error to permit witnesses for the State to stand on their constitutional right and refuse to answer questions asked by counsel for defendant. It appears that several of the witnesses for the prosecution during the course of their testimony stood on their constitutional rights and refused to answer questions on the ground that an answer to such question might tend to incriminate them. Some of these witnesses were named as coconspirators.

In *People* v. *McCrea,* 303 Mich. 213, 282, we stated the rule to be:

"A witness subpoenaed to testify in a criminal trial can stand upon his constitutional right and refuse to answer any questions which might tend to incriminate him. However, a defendant who voluntarily takes the stand in his own defense thereby waives such right and can be subjected to cross-examination concerning the facts of the case and as affecting his credibility."

And it is also the rule that a witness who has been granted immunity may be required to testify to any facts connected with the crime covered by the immunity, but a witness may stand upon his constitutional rights and refuse to answer questions which might tend to incriminate him upon matters that he has not been granted immunity from.[*]

Our latest expression upon this subject is contained in *People* v. *Crow,* 304 Mich. 529. Crow, al-

[*] See 3 Comp. Laws 1929, § 17220 (Stat. Ann. § 28.946).—RE-PORTER.

though not obliged to do so, voluntarily took the stand as a witness in his own behalf, and thereby waived his constitutional privilege against answering self-incriminating questions material to the issue. As to questions affecting his credibility, he was subject to cross-examination, but the trial judge committed prejudicial error when he permitted the prosecution to ask Crow questions irrelevant to the issue and having a tendency to bring in other charges.

Counsel for defendant states in his brief:

"One of the matters which the jury had a right to consider was, whether this testimony they were then giving against these men on trial, was affected by or as a result of their being permitted to operate a game at that very time with full knowledge of the prosecution."

It is obvious that the answer to this question might tend to incriminate the witness and is exactly what we condemned in the *Crow Case, supra.* The trial court was correct in permitting the witness to stand upon his constitutional right and refuse to answer the question.

Other questions have been raised upon appeal. They have been answered in an opinion rendered herewith in the case of *People* v. *Roxborough, ante,* 575; and other companion cases, *People* v. *Ryan, post,* 610; *People* v. *Reading, post,* 616; and *People* v. *Ryckman, post,* 631.

We find no reversible error and the judgment is affirmed. What we have said in regard to defendant Watson applies to defendants Peter Kosiba, John P. McCarthy and George Frank and the judgments as to them are affirmed.

BOYLES, C. J., and CHANDLER, NORTH, STARR, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.