PEOPLE v HAMMOND

Docket No. 55726. Argued December 13, 1974 (Calendar No. 13).—
    Decided August 20, 1975.

    Michael R. Hammond was convicted by a jury of armed robbery
    in Wayne Circuit Court, Michael L. Stacey, J. The Court of
    Appeals, Bashara, P. J., and Danhof and R. L. Smith, JJ.,
    affirmed (Docket No. 16776). Defendant appeals, asserting that
    he was denied a fair trial because of unfair identification
    procedures and misconduct of the prosecutor in cross-examin-
    ing a witness and in closing argument. *Held:* The conviction is
    reversed and the case remanded for a new trial. T. G. Kav-
    anagh, C. J., with whom Levin, J., concurred (Williams, J.,
    concurring in the result), wrote that:

        1. They are not persuaded that the identification procedures
    used were so bad that they must be considered impermissibly
    suggestive.

        2. The prosecutor employed tactics which have repeatedly
    been held to be unfair where, over objection by defense counsel,
    . he cross-examined the defendant's wife, called solely as an alibi
    witness, in such a way as to disparage the defendant as a lazy
    non-provider, although the defendant's character was not in
    issue. It is impossible to determine now how damaging the
    testimony was, and the defendant must be allowed a new trial.

        M. S. Coleman, J., with whom J. W. Fitzgerald, J., concurred,
    dissented on the issue of prosecutorial misconduct, on the
    grounds that:

        1. A witness may be cross-examined on collateral matters for
    the purpose of testing credibility, and the trial judge has
    discretion on the scope of cross-examination in impeaching the
    witness.

        2. The credibility of an alibi witness is especially crucial

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur, Witnesses §§ 610, 664.
[3] 58 Am Jur, Witnesses §§ 623, 625, 630.
[4] 58 Am Jur, Witnesses §§ 715, 732.
[5] 58 Am Jur, Witnesses § 654.
[6] 58 Am Jur, Witnesses § 630.

when the defendant does not take the stand, and cross-examination should not be unduly restricted merely because the defendant inevitably enters into the answers.

3. The cross-examination of defendant's wife, an alibi witness, went to her credibility and his motive and not to the defendant's character, and was not "prosecutorial misconduct".

Reversed and remanded for new trial.

### Separate Opinion

#### T. G. Kavanagh, C. J., and Levin, J.

1. Criminal Law—Defendant's Character—Cross-Examination.

*A prosecutor employed tactics which have repeatedly been held to be unfair where he intentionally brought out evidence of defendant's bad character by cross-examining defendant's wife to bring out that she was receiving aid to dependent children even though her husband lived in the house, that defendant did not have regular employment, that he would absent himself overnight on occasion, and that he had bought a car for $50 and owned a cashmere coat, where the defendant did not put his character in issue and called his wife solely as an alibi witness; the effect of the cross-examination was to disparage the defendant as a lazy non-provider.*

2. Criminal Law—Defendant's Character.

*The state may not offer proof of the bad character of a defendant if the defendant does not first put his character in issue.*

### Separate Opinion

#### M. S. Coleman, J.

3. Witnesses—Cross-Examination—Collateral Matters—Credibility.

*A witness may be cross-examined on collateral matters for the purpose of testing credibility of the testimony.*

4. Witnesses—Cross-Examination—Impeachment—Discretion.

*The trial judge has discretion on the scope of cross-examination in impeaching the witness, and appellate courts will not interfere in the absence of abuse.*

5. Witnesses—Alibi—Credibility—Cross-Examination.

*The jury's assessment of the credibility of an alibi witness in a criminal case is especially crucial when the defendant does not take the stand, and cross-examination should not be unduly*

*restricted merely because the defendant inevitably enters into the answers.*

6. WITNESSES—ALIBI—CROSS-EXAMINATION—DEFENDANT'S CHARACTER.

*There was no "prosecutorial misconduct" in an armed robbery case where defendant's wife, an alibi witness, was cross-examined concerning: (1) veracity of statements requisite to ADC payments received by her although defendant lived at home; (2) defendant's unemployment and his wife's practice of feeding him; (3) facts surrounding purchase by defendant of a car; (4) defendant's ownership of a cashmere coat and the wife's denial of purchasing clothes for him; (5) defendant's practice of occasionally spending the night away from home; and (6) the wife's claim that defendant spent $2 to have a tire changed on the night of the robbery, where all of the subjects of cross-examination were directed toward the credibility of the witness and motive of defendant and nothing went to defendant's criminal character.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research Training and Appeals, and *Gerard A. Poehlman,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

T. G. KAVANAGH, C. J. Defendant was found guilty of armed robbery by a jury and the Court of Appeals affirmed his conviction.

Defendant raises three questions on appeal, one asserting unfair identification procedures and the other two claiming prosecutorial misconduct depriving defendant of a fair trial.

Because we are persuaded that the prosecutor did employ tactics which we have repeatedly held to be unfair, we reverse the conviction and order a new trial.

On December 19, 1972, an armed robber held up a party store in Dearborn Heights. The cashier

reported the robbery to the police and an hour after the holdup was asked to look at photographs at the police department. From among an estimated 700–1000 pictures she selected one as depicting the robber. She said that was the man but could not be sure until she saw him in person. The next day she viewed a lineup of six men and immediately picked out the defendant (who had come to the lineup voluntarily) as the robber. Her identification was immediate and positive and when she identified the defendant in court, she expressly repudiated any suggestion that the police had influenced her choice of the photograph or the individual at the lineup.

Defendant claims that the lineup identification was impermissibly suggestive, resulting in a tainted in-court identification that should not have been allowed.

Defendant argues that unless the photo identification is certain, any suggestiveness in the lineup magnifies the possibility of error. In this case, he claims that because the physical characteristics of the six men in the lineup varied so greatly, in effect there were only two persons for the witness to pick from.

While defendant's argument has merit, we would not predicate reversal on that issue. We are not persuaded that the identification procedures used here were so bad that they must be considered impermissibly suggestive.

It is defendant's second assertion, prosecutorial misconduct, that we find controlling.

The defendant claims that the prosecutor intentionally and impermissibly brought out evidence of defendant's bad character when he cross-examined defendant's wife. Defendant, who did not take the

stand, did not put his character in issue and called his wife solely as an alibi witness.

The prosecutor in cross-examination, over objection by defense counsel, brought out that the wife was receiving ADC even though her husband lived in the house; the defendant didn't have regular employment but that the witness wife nevertheless cooked for and fed him and that she did so despite the fact that he would absent himself overnight on occasion; and that he had bought a car for $50 and owned a cashmere coat.

The people claim that the foregoing is not evidence of defendant's bad character at all and that even if it were, it was not damaging to defendant's case.

We do not agree.

While that cross-examination may have diminished the wife's credibility, its necessary corollary was to disparage the defendant as a lazy nonprovider. It is a well-settled rule that if the defendant does not first put his character in issue, the state may not offer proof of his bad character. *People v Boske,* 221 Mich 129; 190 NW 656 (1922); 1 Wigmore, Evidence (3d ed), § 57, p 456.

Any argument by the appellee that this evidence was not elicited to shed bad light on the character of the defendant is wholly discredited when the tenor of the prosecutor's summation is examined:

"This young man was pretty cunning. He left his wife at 1:30, no money in his pocket, and yet I asked her if he had any money and to her knowledge he had none. He hasn't worked since last July except one job for a week. So, now we've established motive. He needs money. He and his wife that day out of a $150 check, an ADC check, by the way, that's granted for the aid of dependent children, bought food, paid rent, bought food stamps, paid two dollars for the replacement of a tire—

which I will talk about in a few minutes—bought some gas. That young couple only had twenty dollars left to last them for two weeks. They needed money desperately.

\* \* \*

"Let's not be shedding any tears for a man who won't try to go out and change a tire and has ADC money to throw away by not having the strength or the desire to change a tire.

\* \* \*

"In any event, he was under the same roof living off ADC money, an able-bodied young man, too lazy to work, too lazy even to change a tire."

In *People v Johnson,* 393 Mich 488, 498–499; 227 NW2d 523 (1975), this Court stated:

"Whether defendant was rich or poor, employed or unemployed, has nothing to do with guilt in the instant case \* \* \* .

"It is the duty of the courts to keep prosecutorial 'character' examination 'within reasonable bounds'. *People v Gotshall,* 123 Mich 474, 483; 82 NW 274 (1900). The instant case well illustrates the necessity for such constraint."

The case at bar also well illustrates such necessity. It is impossible to determine now how damaging that testimony was to the defendant. For this reason we must allow him a new trial.

Reversed and remanded.

LEVIN, J., concurred with T. G. KAVANAGH, C. J.

WILLIAMS, J., concurred in the result.

M. S. COLEMAN, J. *(concurring in part; dissenting in part).* We concur with the Chief Justice relative to identification procedures, but dissent as to alleged "prosecutorial misconduct". We would affirm the conviction.

It has long been settled that a witness may be

cross-examined on collateral matters for the purpose of testing credibility of the testimony.[1] The trial judge has discretion on the scope of cross-examination in impeaching the witness, and appellate courts will not interfere in the absence of abuse.[2]

In the instant case, defendant objects to cross-examination of his wife concerning: (1) ADC payments received by her although defendant lived at home; (2) defendant's unemployment and his wife's practice of feeding him; (3) purchase by defendant of a car; (4) defendant's ownership of a cashmere coat; (5) defendant's practice of occasionally spending the night away from home; and (6) wife's claim that defendant spent $2 to have a tire changed on the night of the robbery.

Nothing in the cross-examination of the alibi witness, defendant's wife, went to defendant's criminal character. It was not in issue. Defendant did not take the stand. Cross-examination did go to the credibility of the witness and to the plan of action of defendant.

(1) The veracity of the statements requisite to ADC and the wife's honesty in subsequent reporting of her status related directly to her honesty and, therefore, to her credibility as a witness.

(2) Defendant's unemployment and the witness' purchase of food (and clothing?) for him from the ADC funds went to motive of defendant. (Also see [6].)

(3) Questions regarding the purchase of the $50 car were directed to credibility of the witness. For example:

---

[1] *People v Fenner,* 217 Mich 239; 185 NW 806 (1921); *People v La Londe,* 197 Mich 76; 163 NW 490 (1917).

[2] *People v Johnson,* 382 Mich 632; 172 NW2d 369 (1969); *People v Fleish,* 321 Mich 443; 32 NW2d 700 (1948); *People v Watson,* 307 Mich 596; 12 NW2d 476 (1943).

"*Q.* Do you know who he bought the car from?
"*A.* No, I don't.

\* \* \*

"*Q.* You have no idea?
"*A.* No, I don't.

\* \* \*

"*Q.* Do you know a person named Flynn?
"*A.* No.
"*Q.* F-L-Y-N-N?
"*A.* No.
"*Q.* As a matter of fact, wasn't the car bought December 1st from a man named Flynn?
"*A.* I guess that is it."

(4) As to the cashmere coat, the witness denied purchasing clothing for defendant so credibility was again in focus. She said he had had the coat for a long time. The judge sustained defendant's objection to further questioning.

(5) The questions as to defendant's whereabouts were also directed to credibility of the alibi witness. She had said that defendant lived at home, yet she testified that defendant came to pick her up at her mother's (around the corner from her apartment) at about 3:36. (The robbery was at 3:45.)

"*Q.* Were you really living with your husband at that time?
"*A.* Yes.
"*Q.* Wasn't he living somewhere else?
"*A.* No."

The questions regarding his absence from the home followed the colloquy above and were directed towards credibility of the witness and not towards defendant's character.

(6) The question concerning the $2 spent for a

tire change was directed to the witness' assertion
that defendant had a flat tire and went to a gas
station to "have it fixed" at the time of the rob-
bery. Credibility of the alibi witness is crucial on
this point. The record contains this exchange:

"*Q.* You are on ADC and with him unemployed, yet
he hired somebody to change a tire for him?
   "*A.* That is what he did.

                    *    *    *

   "*Q.* And that tire never was flat, was it?
   "*A.* It never was? Yes.
   "*Q.* It was going flat?
   "*A.* Yes, it was."

Willie Williams testified that he did change a
wheel between 3:15 and 5:15 on the day in ques-
tion. He did not know if there was a hole in the
tire. He had charged $2 for the service.

Defendant was unemployed and his wife had
only $20 remaining to last almost two weeks, so
spending $2 to do something which defendant
could easily have done himself was significant to
the alibi and again raises the question of credibil-
ity.

The jury's assessment of the credibility of an
alibi witness is especially crucial when defendant
does not take the stand. We should not unduly
restrict cross-examination merely because defend-
ant inevitably enters into the answers of an alibi
witness. Although defendant did not place his
character in issue, neither did the prosecutor place
it in issue. The prosecutor's cross-examination of
the alibi witness focused in small part upon de-
fendant's plan of action, but largely upon the
wife's credibility.

There was no "prosecutorial misconduct" in this

case unless the Court is hereby establishing a straight-jacket double standard which would undermine the adversary system.

We would affirm.

J. W. Fitzgerald, J., concurred with M. S. Coleman, J.

Swainson and Lindemer, JJ., took no part in the decision of this case.