## ROACH v. PLANK.

1. BUILDING AND LOAN ASSOCIATIONS—JOINT ACCOUNTS.

   A party who has placed her funds with a savings and loan association in the joint names of herself and another may withdraw such funds and reinvest them in her own name.

2. APPEAL AND ERROR—JOINT TENANCY—MENTAL COMPETENCY— UNDUE INFLUENCE—FRAUD—RECORD.

   Finding of trial court in suit to set aside transactions whereby elderly spinster, now deceased, had caused certain real and personal property to be placed in the name of herself and defendant nephew with right of survivorship that plaintiffs had failed to establish either mental incapacity on part of deceased, undue influence upon her, or fraud by defendant nephew *held*, supported by record.

3. TRUSTS—FIDUCIARIES—JOINT TENANCY—UNDUE INFLUENCE— FRAUD—RECORD—BURDEN OF PROOF.

   In suit to set aside transactions whereby elderly spinster, now deceased, had caused certain real and personal property to be placed in the joint names of herself and defendant nephew with right of survivorship, contention that latter occupied such a fiduciary relation toward deceased as to place upon him the burden of disproving fraud or undue influence *held*, not supported by record, especially in view of fact that she had the advice of her own counsel as well as of officials in the financial institutions with which she had accounts and was fully competent and able to manage her own affairs.

4. WITNESSES—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED —ATTORNEYS.

   Testimony of attorney with whom elderly spinster, now deceased, had advised concerning transfer of real and personal property was not inadmissible in suit by two nephews of deceased against defendant nephew who acquired title to such property by right of survivorship because attorney's testimony was equally within knowledge of deceased, since he was the agent of the deceased, not of defendant nephew; it being noted also that plaintiffs called him for cross-examination (3 Comp. Laws 1929, § 14219).

5. SAME—TESTIMONY OF AGENT OF DECEASED ADMISSIBLE.

Testimony of agent of deceased in making contract is not barred by statute relative to matters equally within knowledge of deceased but only that of agents of parties who may have dealt with deceased (3 Comp. Laws 1929, § 14219).

6. SAME—NOMINAL PARTIES.

Statutory provision barring testimony of opposite parties and their agents as to matters equally within knowledge of a deceased person would not bar testimony of person who had been made a party to the case where it is disclosed on the trial of the case that plaintiffs are not entitled to any relief against such agent (3 Comp. Laws 1929, § 14219).

7. BUILDING AND LOAN ASSOCIATIONS—JOINT ACCOUNTS—SURVIVORSHIP.

The survivor of parties in whose joint names accounts are made with savings and loan associations takes the accounts in his sole right (3 Comp. Laws 1929, § 12140, as amended by Act No. 135, Pub. Acts 1931; Act No. 77, Pub. Acts 1939).

8. SAME—JOINT ACCOUNT—WITHDRAWAL.

Determination as to whether transaction whereby account with a Federal savings and loan association was changed from the name of an elderly spinster, now deceased, to the joint name of herself and her nephew with whom she was then living, pursuant to her request and after explanation to her by an officer of the association that either she or her nephew could withdraw from the account at any time during the life of either, created a right of survivorship in nephew is not made in suit to set aside such transaction because of alleged undue influence and fraud upon part of such nephew although nothing was written in the assignment as to a right of survivorship where record shows nephew did withdraw the entire account during her lifetime (Act No. 77, Pub. Acts 1939).

9. CONTRACTS—CONSTRUCTION—INTENT.

The object to be arrived at by courts in construing deeds or other contracts is to ascertain clearly the intention of the parties.

10. JOINT TENANCY—INTENT.

An intent on the part of the grantors to create an estate other than one in common may be inferred.

11. BANKS AND BANKING—JOINT ACCOUNTS—SURVIVORSHIP.

Strict formalities are not requisite in creating a joint bank account with right of survivorship.

Appeal from Kent; Brown (William B.), J.   Sub-
mitted October 17, 1941.   (Docket No. 42, Calendar
No. 41,740.)   Decided January 5, 1942.

Bill by Thomas G. Roach, administrator of the
estate of Carrie G. Plank, deceased, William V.
Plank and Howard A. Plank against J. Raymond
Plank and others to set aside transactions whereby
named defendant became joint owner with right of
survivorship in the property of deceased.   Bill dis-
missed.   Plaintiffs appeal.   Affirmed.

*Fred P. Geib* and *Clem H. Block,* for plaintiffs.

*Abner Dilley* and *Ralph M. Bahna,* for defendants.

NORTH, J.   Miss Carrie G. Plank, unmarried and
a retired school teacher, died intestate January 5,
1940, at the home of her nephew, defendant J.
Raymond Plank, in Grand Rapids.   She was past
82 years of age and had been living in the home of
her nephew Raymond since December 2, 1938.   Ap-
proximately 5 weeks after going to live in Ray-
mond's home, Carrie G. Plank so arranged the title
to both her real and personal property that it was
held jointly between her and the nephew Raymond
with right of survivorship.   Aside from the dis-
interested administrator of the estate of Carrie G.
Plank, deceased, the plaintiffs herein are William V.
Plank and Howard A. Plank, two other nephews of
the deceased.   They and the defendant J. Raymond
Plank are the sole heirs at law of Carrie G. Plank,
deceased. By their bill of complaint the two nephews
who are plaintiffs seek cancellation of the transac-
tions whereby defendant J. Raymond Plank became
the joint owner with right of survivorship in the

property of the aunt, Carrie G. Plank. We quote from plaintiffs' brief:

"Plaintiffs claim the transactions resulting in J. Raymond Plank's acquisition of his aged aunt's property are void because of fraud practiced in a fiduciary relationship, whereby J. Raymond Plank defrauded his brothers out of their inheritances."

After full hearing in the circuit court, a decree was entered which dismissed plaintiffs' bill of complaint. They have appealed.

It is first claimed that under the record made the trial court was in error in not holding that the challenged transactions through which defendant J. Raymond Plank obtained an interest in the property of deceased were effected through fraud and undue influence which rendered them invalid as against the rights of the other heirs. As bearing upon this phase of the case the following facts, among others, may be noted.

Because of ill health Miss Carrie G. Plank in December, 1938, went to live in the home of her nephew J. Raymond Plank. She was given excellent care and in a large measure regained her health. She shortly resumed such activities as going about the city of Grand Rapids, visiting friends, teaching a Sunday school class, et cetera. Seemingly because she so preferred, she continued to reside in the home of her nephew Raymond until her death in January, 1940. There is not, nor under the record could there be, any question about Miss Plank's mental capacity at the time of the transactions of which plaintiffs complain or for months thereafter. At the time Miss Plank went to live with Raymond she owned a house and lot of moderate value on Second street in Grand Rapids. About 5 weeks after going to live with Raymond Miss Plank through a lawyer with

whom she had consulted placed title to this real estate jointly in herself and J. Raymond Plank with right of survivorship. The deeds evidencing the transaction were promptly recorded by the attorney. The record discloses that even prior to her going to reside in the home of the nephew, Raymond, Miss Plank had been advising or at least attempting to advise with her legal counsel as to making some disposition of her property by will or otherwise. At this time Miss Plank had on deposit in the Old Kent Bank of Grand Rapids $510.78; an account in the Mutual Home Federal Savings & Loan Association of $2,270.07; in the West Side Federal Savings & Loan of $1,310.71; and in the State Savings Association of $2,011.70. With the exception of setting aside a specific sum for the expenses of her funeral and burial, Miss Plank, after communicating to her attorney her intention so to do and advising with him, went to the respective financial institutions and changed her accounts in such a manner as made them joint with her nephew Raymond and with right of survivorship. In each instance she was definitely advised by officers of the institution as to the effect of carrying out this plan; but she clearly indicated her desire to have the changes made. During the remaining months of her life she made no effort to nullify any of the above-noted transactions. Obviously she could have withdrawn these funds and reinvested them in her own name. Notwithstanding the nephews who are plaintiffs herein knew of these transactions for an appreciable time before the death of their aunt they neither instituted nor caused her to institute any proceedings during her lifetime wherein the validity of these transactions was assailed.

The alleged fraud in consequence of which the plaintiff nephews assert that defendant J. Raymond

Plank obtained his interest in the property of `the aunt in substance is as follows. For some years prior to her coming to Raymond's home, Carrie Plank lived with another retired school teacher, seemingly on something of a cooperative basis. It is claimed that in September, 1939, Miss Plank told her nephew Howard and his wife that Raymond had told his Aunt Carrie that the other retired school teacher with whom she had lived was going to sue her for room and board for all the time she had lived there and had not paid. Evidently the plan devised to defeat the enforcement of such an obligation against Miss Carrie Plank was to place her property jointly in the name of herself and nephew Raymond. The fraud asserted, at least by implication, is that such a claim against Miss Plank or her estate had not been contemplated by the other retired school teacher with whom Miss Plank had lived. The facts and circumstances alleged to have constituted this fraud were denied by defendant J. Raymond Plank.

"I never made any statement of any kind to my Aunt Carrie that Frances VanBuren might sue her, more than likely would sue her, or anything of that kind for board and keep, room rent and things of that kind. I never requested or suggested that Aunt Carrie should cover up her property in any way so that Miss VanBuren would not be able to collect any judgments she got against her. I never held any conversation along this line with Aunt Carrie, and she never said anything about it to me."

There is testimony disclosing many other facts and circumstances which bear pro or con upon the controverted issues of fraud and undue influence; but no purpose would be served by attempting to review them in detail herein. The opinion filed by the

trial judge covers nearly 20 pages of the printed record. He gave careful consideration to every aspect of the case. His conclusion that neither mental incapacity, undue influence nor fraud were established is well supported by the record and must be affirmed.

Further, the record does not sustain appellants' contention that at the time of the challenged transactions there existed such a fiduciary relation between Miss Plank and the defendant J. Raymond Plank that the burden of disproving fraud or undue influence was upon defendants. It is true that Miss Plank was then and for a few weeks had been living in the home of defendant J. Raymond Plank, but at that time she was paying for the services so rendered her. We are aware of the fact that on some isolated occasions defendant J. Raymond Plank had advised or assisted his Aunt Carrie in some of her business transactions. But at and immediately prior to the transactions assailed in the instant case Miss Plank had the advantage of the advice of her own counsel as well as of officials in the financial institutions wherein she had accounts; and further, it convincingly appears from this record that at that time and for months thereafter Miss Plank was fully competent and able to manage her own affairs.

Appellants contend that the testimony of the attorney with whom Miss Plank advised and who prepared the deeds to which reference has hereinbefore been made was incompetent as to matters equally within the knowledge of the deceased and that its admission was prejudicial error. In this connection it is stated in appellants' brief:

"Carrie G. Plank never had independent legal counsel. Instead, J. Raymond Plank's lawyer was her adviser and that lawyer admitted the chal-

lenged instruments were made by reason of his advice and that counsel was allowed, over appellants' objection, to detail at great length in his testimony the alleged reasons Carrie G. Plank gave for doing what she did.''

This contention on the part of appellants is based upon the following erroneous statement quoted from their brief: ''In the case at bar, there can be no question that Mr. Dilley [the attorney] was the agent of J. Raymond Plank.'' While the record discloses that on previous and subsequent occasions this attorney had served Mr. J. Raymond Plank pro-fessionally, it also appears, and there is no contradicting testimony, that in the transactions challenged in this suit Miss Carrie Plank of her own volition sought and acted upon the advice of this attorney. In these transactions the attorney was representing Miss Plank, and not J. Raymond Plank. Aspersions cast upon the attorney to the contrary are not justified by this record. The objection urged by appellants is based upon the statutory provision which in part reads:

''No person who shall have acted as an agent in the making or continuing of a contract with any person who may have died, shall be a competent witness in any suit involving such contract, as to matters occurring prior to the death of such decedent, on behalf of the principal to such contract against the legal representatives or heirs of such decedent, unless he shall be called by such heirs or legal representatives.'' 3 Comp. Laws 1929, § 14219 (Stat. Ann. § 27.914).

While we do not place decision on that ground, it should be noted in passing that this attorney was called as a witness in this case for cross-examination by appellants. Holding, as we do, that in the trans-

actions involved in this suit the attorney was the agent of Miss Carrie G. Plank, the admissibility of his evidence is controlled by our decision in *Lammie* v. *Klug,* 264 Mich. 323, wherein Mr. Justice BUTZEL writing for the Court said:

"The inhibition of the statute does not affect the testimony of agents of the deceased, but is applicable only to that of agents of parties who may have dealt with the deceased."

In *Cutter* v. *Powers,* 200 Mich. 375, at page 385, we said:

"It is permissible, and often the agent of one party to a transaction is appointed by the adverse party as his agent for certain purposes, and each party will then stand in the relation of principal to the agent as to the matters by him entrusted to the agent, and as to those alone. 2 C. J. p. 448. This rule has been frequently asserted by this court."

Nor do we think the statutory provision applies to an agent merely because he is made a party defendant, if the trial of the case discloses, as in the instant case, that plaintiffs are not entitled to any relief against such agent.

Our holdings in *Re Peterson's Estate,* 239 Mich. 452, and in *Lilly* v. *Schmock,* 297 Mich. 513, are controlling as to J. Raymond Plank's right as a survivor of Carrie G. Plank to take in his sole right the accounts made in their joint names. Such accounts are provided for by statute. 3 Comp. Laws 1929, § 12140, as amended by Act No. 135, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 12140, Stat. Ann. § 23.547); Act No. 77, § 1, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 12170-4, Stat. Ann. 1941 Cum. Supp. § 23.584). As to two of the three savings and loan accounts to which defendant J. Raymond Plank asserts joint title with sole right as sur-

vivor, it is sufficient to note that Miss Plank in her lifetime altered these two accounts in such a manner as brought them literally within the terms of the cited statutes; and as to these two accounts Raymond became a joint owner with right of survivorship. In changing her account in the third savings and loan association the following form was used:

"For a valuable consideration, to me in hand paid by Carrie and J. Raymond Plank, aunt and nephew, I hereby sell and assign to them all my right, title and interest in and to the shares in the Mutual Home Federal Savings & Loan Association represented by this Passbook No. 1638."

The above assignment was witnessed by J. W. Leslie, the president of this association. Touching the circumstances of the change of this account, he testified:

"I explained to Carrie Plank in detail the wording on our signature card, of a joint card which she had signed, that it meant that either one could draw from the account at any time during the life of either, or after their death. She was satisfied with it."

It may be noted that in changing this particular account, unlike the others, nothing was written in the assignment as to a right of survivorship. But we think under the circumstances of this case it quite conclusively appears Miss Plank at the time knew and intended that upon her changing the account as she did "it meant that either one could draw from the account at any time during the life of either." The record discloses that all of this account was withdrawn during the lifetime of Miss Plank. Under the circumstances there is no occasion for determining whether the above-quoted assignment created a right of survivorship. Instead it is suffi-

cient to note that it was the intent and purpose of Miss Plank so to alter her account with this savings and loan association that either she or her nephew Raymond had the right to withdraw from the account. As a matter of fact the record discloses Raymond did make such withdrawals on several occasions during the lifetime of his aunt, finally withdrawing the balance of the account prior to her death. Under this record there is no equitable ground for attempting to disturb or alter the nature of the transaction as intentionally and lawfully designed and executed by Miss Plank during her lifetime.

"The object to be arrived at by courts in construing deeds or other contracts is to ascertain clearly the intention of the parties." *Murray* v. *Kator,* 221 Mich. 101.

In the case just cited one of the headnotes reads: "An intent on the part of the grantors to create an estate other than in common may be inferred;" and in *Equitable & Central Trust Co.* v. *Zdziebko,* 260 Mich. 366, 372, we said: "Strict formalities are not requisite in creating a joint bank account with right of survivorship."

Statement of the reasons or the circumstances which led to joining others with J. Raymond Plank as parties defendant is not requisite in view of the conclusion reached. The decree entered in the circuit court is affirmed, with costs to appellees.

CHANDLER, C. J., and BOYLES, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.