## PEOPLE v JOHNSON

Docket No. 63424. Decided October 3, 1980. On request by defendant for review of the record the Supreme Court, after ordering the prosecutor to show cause why the defendant should not be granted relief, reversed the defendant's conviction and remanded the case for a new trial.

Johnnie E. Johnson was convicted by a jury in Kalamazoo Circuit Court, Patrick H. McCauley, J., of delivery of a controlled substance. During the cross-examination of a white undercover police officer the defendant's attorney asked the officer about the defendant's reputation for caution and for disliking white people, on the theory that the officer's testimony that the black defendant sold $70 worth of heroin to him, a white stranger, for $50 was implausible. On redirect examination the assistant prosecutor questioned the officer about the defendant's reputation for being a drug dealer and for violence. The officer testified, after objection by the defendant's attorney, to the effect that the defendant had a reputation of being a "big man" in the drug community of Kalamazoo who ran his business with "an iron fist". The trial court instructed the jury, without objection by defense counsel, only on the crime charged, delivery of a controlled substance. On appeal, the defendant argued that the court should have given instructions on lesser included offenses on its own motion. The Court of Appeals, MacKenzie, P.J., and D. E. Holbrook, Jr., and Cynar, JJ., affirmed in an unpublished per curiam opinion (Docket No. 77-4946). Defendant requested review of the record. Held:

1. Once a defendant has placed his character in issue, it is proper for the prosecution to introduce evidence that the defendant's character is not as good as is claimed. However, unless the defendant has chosen to place his good character in issue, the prosecutor is not permitted to attack it. The issue is whether the defendant placed into controversy his good character as a peaceful law-abiding citizen. In this case the defendant's attorney did not ask the undercover officer about the defendant's good character, but asked about his caution in association with, and distrust of, white people. A defendant does not open the door to all evidence concerning his character

merely by basing an argument on some aspects of his character; he opens the door only to evidence that his character is not what he claims it to be.

2. The characterization the prosecutor elicited concerning the defendant's reputation as a violent drug dealer overstepped the permissible bounds of redeeming the witness and exploring the traits of the defendant's character which he had placed in issue. It did not refute the defendant's argument that he disliked whites and would not have sold drugs to a white stranger at discount prices. The error in permitting this testimony was not harmless because the undercover police officer was the only witness who testified to the sale of heroin to him by the defendant at the house of an informant. The defendant and other witnesses for the defense testified that the defendant had left the house when he saw that the informant had a white guest. The defendant was denied a fair trial because his credibility could only be damaged by the testimony that he was a bad man.

3. A trial court may, on its own motion, instruct the jury on a lesser included offense if the evidence adduced at trial would warrant conviction of the lesser charge and the defendant has been afforded fair notice of the lesser included offense. However, the court is not required to do so unless the defendant is charged with first-degree murder. Therefore, the failure to give the instructions on lesser included offenses is not erroneous in this case.

Reversed and remanded for a new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Paul Burakoff,* Assistant Prosecuting Attorney, for the people.

*DeVries & Lamb, P.C.* (by *William A. Redmond),* for defendant.

PER CURIAM. This case concerns two issues. First, the extent to which a prosecutor over objection can attack a defendant's reputation where only specific facets of character, not his good reputation, were raised by defendant. Second, whether it was reversible error for the trial judge not to

instruct the jury *sua sponte* on lesser included offenses to delivery of a controlled substance. We find that the defendant did not place his good character at issue and hold that the prosecutor's reference to the defendant's reputation as being a big man in the drug community who took care of business with an iron fist should have been excluded in accordance with MRE 404(a)(1). We further find that since defendant did not request instructions be given to the jury on lesser included offenses there was no error in the lower court's failure to issue such instructions *sua sponte.*

## I. Facts

The Kalamazoo Police Department requested Cora Pierce to be an informant to aid in their narcotics investigation. Pierce, charged with three counts of delivery of a controlled substance, agreed to cooperate in exchange for a reduction of bail and in the hope that the state would either dismiss the pending prosecution or recommend a lenient sentence. Pierce arranged for undercover Officer Dan Weston to meet with defendant at her house on the evening of April 23, 1975. She introduced defendant as her friend, "John L.", and left the room.

Officer Weston testified that he talked with defendant for a half an hour concerning the purchase of various quantities of heroin. Defendant told Weston that the heroin was of good quality and promised that he could obtain the drug on short notice but that at the present time his "bag", or supply, was low. They therefore made tentative arrangements for a future purchase. After some difficulty in setting up a convenient meeting place Pierce was called upon to arrange a second meeting. Weston stated that he arrived at the infor-

mant's house on the evening of April 27 shortly before the defendant. Pierce again left the two men alone.[1] The undercover officer claimed that he purchased seven "dime bags" of heroin from defendant for $50 and then left to have the substance analyzed. Defendant was subsequently arrested for delivery of a controlled substance in violation of MCL 335.341(1)(a); MSA 18.1070(41)(1)(a), superseded by 1978 PA 368, and convicted in Kalamazoo Circuit Court on July 1, 1977. Judge Patrick McCauley sentenced defendant to 10 to 20 years, recommending that the minimum sentence be considered the maximum. The Court of Appeals affirmed on June 21, 1979 in a one-page unpublished per curiam opinion. Defendant now requests review by this Court pursuant to Administrative Order 1977-4, 400 Mich lxvii.

During a lengthy cross-examination defense counsel asked Weston about defendant's reputation concerning white people:

[1] Although only Officer Weston was present during the sale, Officers Ruthven and Colby had the house under surveillance. Both testified that they saw a green Cadillac, similar to the car known to be driven by defendant, arrive a few minutes after Weston entered the house. Since it was near midnight and the officers were a few hundred feet away neither the driver nor passenger could be positively identified. However, a street light enabled the officers to note that the driver, who entered the house alone while the passenger waited in the car, was a tall, slender black man wearing a large, white Panama hat and dressed in predominantly white or very bright clothing. Defendant produced a witness who characterized himself as a close friend of defendant's and testified that he and the defendant did go to Cora Pierce's house during the evening of April 27, but claimed that it was in a 1972 white Cutlass with a black top. The witness noted that the defendant went into the house alone but insisted he was gone for only a few minutes, five or six at the most, rather than the 15 minute estimate by Weston or the 20-30 minute range given by Colby. The defense witness also testified that the defendant was a conservative dresser, never wearing loud clothes nor a white Panama hat. Defendant likewise testified that he never owned or wore a white Panama hat nor dressed in loud clothing. He admitted to briefly stopping by to visit Pierce in accordance with her request. While there he did see "a whitey" but testified that "when I saw him, I split". He further stated that he never met Weston before his arrest.

"*Q.* You knew John L. by reputation, didn't you?

"*A.* Yes.

"*Q.* Did you know what he thought of whites?

"*A.* No.

* * *

"*Q.* * * * By reputation was Johnnie known as a cautious man?

"*A.* Yes.

* * *

"*Q.* Cora [Pierce] never told you that Johnnie L. hates whites?

"*A.* No, I don't believe so.

"*Q.* You didn't hear that on the street?

"*A.* That he hates whites?

"*Q.* Yes.

"*A.* No, I never heard that on the street.

"*Q.* You didn't know that about the man at the time you were supposedly making all these deals.

"*A.* No."

On redirect examination the prosecutor returned to the line of questioning concerning defendant's reputation. However, rather than confining himself to defendant's hatred and suspicion of whites and his alleged cautiousness the prosecutor probed further:

"*Q. John L., did he have a reputation in the drug community* of Kalamazoo?

"*A.* Yes, he did.

"*Q.* What was that?

"*A.* At that particular time it was a *reputation of being the big man* or one of the big men.

"*Mr. McWhorter [Defense Counsel]:* I am going to object to this as hearsay, your Honor.

"*The Court:* Overruled.

"*A.* That he had—

"*Q. Did he also have a reputation with regard to violence?*

"*A.* Yes.

"*Mr. McWhorter:* Now, your Honor, I am going to object.

"*The Court:* Objection is overruled.

"*Q.* What was that?

"*A. That he wasn't anybody that you wanted to cross because his reputation was one that sort of took care of business with an iron fist* and that, he was *kind of the Mr. Heavy type* along with being a big dealer, if that describes it." (Emphasis added.)

Defendant argued in his brief to the Court of Appeals that the reference to him as a "big man" in the drug community who "took care of business with an iron fist" was highly prejudicial. He contended that this testimony was inadmissible because defendant did not offer evidence of his good character and therefore did not place his general reputation in issue. The prosecutor conceded that defense counsel was merely trying to "discredit the concept that [defendant] would sell anything to a white man", but argued that "the limited inquiry into defendant's general reputation" was justified as being either a legitimate attempt to rehabilitate Officer Weston or an appropriate examination into defendant's reputation after it was placed into issue during the cross-examination. The Court of Appeals agreed, holding:

"[D]efendant put his character in issue on cross-examination of the people's witness. The prosecutor's attempt to refute such claim was therefore proper. *People v [Roger] Johnson,* 382 Mich 632; 172 NW2d 369 (1969)."

Appellant sought review by this Court in July of 1979. On March 28, 1980 an order entered for the prosecutor "to show cause * * * why the defendant's conviction should not be reversed on the

ground that evidence of defendant's bad character was improperly admitted over objection". 408 Mich 877 (1980). In his answer to the show cause order the appellee stressed that the inquiry concerning defendant's reputation in the drug community was made only after defendant introduced the issue of his reputation for cautiousness and hating whites. This inquiry, it is argued, was in accord with Rule 404(a)(1) of the Michigan Rules of Evidence which states:

"Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

"(1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same."

The prosecutor reiterated the arguments presented at the Court of Appeals, claiming: "[a]fter the defendant had 'opened the door' on the issue of defendant's character, the Assistant Prosecutor was then free to also inquire into the reputation of the defendant in order to rebut any position by the defendant established by his character questions."

## II. FIRST ISSUE

The Court of Appeals and the appellee made the same fundamental error. No one disputes that "[o]nce a defendant has placed his character in issue, it is proper for the prosecution to introduce evidence that the defendant's character is not as impeccable as is claimed". *People v Perez,* 66 Mich App 685, 693; 239 NW2d 432 (1976), *lv den* 397 Mich 824 (1976). However, "[i]t is fundamental

that unless the defendant has first *chosen to place his good character in issue,* the state is not permitted to attack his character". *Roti v State,* 334 So 2d 146, 148 (Fla App, 1976) (emphasis added). Accord, *People v Hammond,* 394 Mich 627, 631; 232 NW2d 174 (1975) (opinion by T. G. KAVANAGH, C.J.); *People v Boske,* 221 Mich 129, 135; 190 NW 656 (1922). See McCormick, Evidence (2d ed), §§ 188, 191, pp 444-445, 454-459; 1 Wigmore, Evidence (3d ed), § 57, p 456. Therefore the issue is not whether defendant placed any part of his reputation at issue but whether defendant placed his good character as a peaceful, law-abiding citizen into controversy.

At no time during the lengthy cross-examination of Officer Weston did defense counsel inquire into defendant's good character. In fact, it was just the opposite: a negative character trait of defendant was placed into issue as a defense. After asking Weston if he knew what defendant thought of whites, defense counsel challenged the credibility of the undercover officer's testimony.

"*Q.* It is your testimony that John L. would have just shaken hands with you and sat down and talked to you while he was sitting on the couch, is that your testimony?

"*A.* Yes, it is.

\* \* \*

"*Q. This is a man you hadn't even met, didn't even know* up until, *except for a half-hour conversation* and you make friends very quickly?

"*A.* Depends on the individual.

"*Q.* Well, let's say the transaction that you claim happened. *By reputation was Johnnie known as a cautious man?*

"*A.* Yes.

\* \* \*

"*Q*. And you are telling us that this man gave you $70 worth of dope for $50?

"*A*. That's correct.

"*Q*. Not a very good businessman, would you agree?

"*A*. No, not at all."

Thus defense counsel attempted to both discredit the prosecutor's main witness and lay the foundation for the defense of mistake of identification by arguing that Weston's testimony that defendant, a black who hated and distrusted whites, sold $70 worth of heroin to a white stranger for $50 was implausible because it was not within defendant's nature to be so cordial toward whites.[2]

---

[2] Subsequent testimony by defense witnesses and defendant built upon this foundation. The first defense witness, Ms. Stallworth, testified that defendant had told her that he disliked and distrusted whites and noted:

"*A*. On several occasions when he came to my house and there was some white people there which he did not like and he did not stay and he let me know that that was the reason.

"*Q*. When he would come to your house and you had a white person there, he'd leave?

"*A*. Yes.

"*Q*. You ever see him stay around when there was a white person there?

"*A*. No."

Similarly Mr. Taliafarro, the alleged passenger of defendant during the night of the drug sale, testified that when defendant returned to the car after only a few minutes he exclaimed that Pierce "got a honky sitting up in there". When asked to give his version of what transpired defendant stated:

"*[A.]* * * * I've seen a whitey, you know, at Cora's when I went there but I don't know what his name was or who he was cause when I saw him, I split.

"*Q*. Why?

"*A*. I don't be around or associate, you know, with whites, you know, you don't come in contact with them, you know, I don't have any business with them, you know, I don't live with them, be with them.

"*Q*. Do you like whites?

"*A*. Yeah, they're all right, you know, I mean I'm not, you know, I don't have no personal thing against them, you know, no one, you know.

"*Q*. Why would you split just because there's a white in the house?

"*A*. I just don't, just, ain't my thing, I don't feel at ease around, you

The prosecutor would have been justified in attempting to redeem his witness on redirect examination by asking, for example, whether he ever knew of defendant associating with whites in the past or whether it was not unheard of for a drug pusher to initially offer to sell heroin at a discount rate in order to gain new customers. In this manner the prosecutor could have rebutted defendant's attack on the credibility of Weston's testimony. However, the power of the state to rebut the character of defendant is limited to the trait or traits introduced by the defendant. See *Salgado v United States*, 278 F2d 830, 833 (CA 1, 1960); McCormick, Evidence (2d ed), § 191, p 459; 1 Wigmore, Evidence (3d ed), § 59, p 462, fn 2. A defendant does not open the door to any and all evidence concerning his character merely by basing an argument on some aspects of his character. He opens the door only for evidence that his character is not what he claims it to be. In eliciting testimony of defendant's reputation for being a big drug dealer and having a bad reputation for violence as "the Mr. Heavy type" who runs his business "with an iron fist" the prosecutor overstepped the permissible bounds of both redeeming his witness and exploring those character traits placed into issue by defendant.

The above characterization does not refute defendant's claim that he dislikes whites and would not have sold drugs to a stranger at discount prices. Therefore, *People v Roger Johnson, supra,* is inapposite. Since defendant did not place his good character at issue the state erred in attacking it. *People v Hammond, supra; People v Perez, supra.*

---

know, I don't mess with them, I don't be with them and don't mess their women so, you know, there's no other reason for me to come in contact unless I'm, you know, going to purchase something and this is at a store or somewhere, you know."

We find the error was not harmless. The credibility of Officer Weston and defendant were crucial to the jury's deliberations since they were the only two present at the sale. The surveillance officers could not identify the man entering the house and Pierce only testified that she introduced the two men before leaving the room. Defendant's witnesses, if believed, affirmed defendant's claim that he stopped by the house to visit at the request of Pierce but did not stay when he saw that she had a white guest. Defendant's credibility in the eyes of the jury could only be damaged through the "bad man" image presented by the state. Therefore defendant was denied a fair trial.

## III. Second Issue

Defendant also claims that the trial judge erred in not instructing the jury on the lesser included offenses to delivery of a controlled substance. Defendant does not assert, nor does the record show, that instructions on lesser included offenses were requested. Although a trial judge *may* "instruct *sua sponte* on a lesser included offense * * * if the evidence adduced at trial would warrant conviction of the lesser charge and defendant has been afforded fair notice of those lesser included offenses", *People v Chamblis,* 395 Mich 408, 417; 236 NW2d 473 (1975), he is not required to do so unless the defendant is charged with first-degree murder. *People v Henry,* 395 Mich 367, 374; 236 NW2d 489 (1975); *People v Jenkins,* 395 Mich 440; 236 NW2d 503 (1975). Therefore we find that the trial court did not err in failing to give instructions *sua sponte* on lesser included offenses to delivery of a controlled substance.

However, since the trial court erred in permit-

ting, over objection, the prosecutor to inquire into defendant's reputation in the drug community for being a "big man" who "took care of business with an iron fist" and since such testimony was prima facie prejudicial we reverse and remand the case for retrial.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.