PEOPLE v JOHNNIE JOHNSON

Docket No. 57654. Submitted March 24, 1983, at Detroit.—Decided August 1, 1983.

Defendant, Johnnie E. Johnson, was convicted by a jury in the Kalamazoo Circuit Court, Patrick H. McCauley, J., of delivery of a controlled substance. He appealed and the Court of Appeals affirmed in an unpublished per curiam opinion on June 21, 1979. (Docket No. 77-4946.) Thereafter, the Supreme Court found that certain character evidence introduced by the prosecution had been erroneously admitted. Finding such error not to be harmless, the Court reversed and remanded for a new trial. 409 Mich 552 (1980). Following his second trial in the Kalamazoo Circuit Court, Frederick A. Grimm, J., defendant was again convicted of delivery of a controlled substance. Defendant again appeals alleging error in the admission of certain testimony suggesting that defendant was reputed to be a major drug dealer. *Held:*

1. The defendant did not place in issue his reputation in the drug community, therefore, the people could not introduce evidence showing that defendant was reputed to be a major drug dealer.

2. The testimony by the police officer did suggest that defendant had such a reputation and, therefore, was inadmissible character evidence.

3. The admission of this evidence was not harmless error.

Reversed and remanded.

CRIMINAL LAW — TRIAL — EVIDENCE — CHARACTER — DEFENDANT'S REPUTATION.

The power of the state to rebut the character of a defendant is limited to the character trait or traits introduced by the defendant; character evidence regarding particular aspects of the defendant's reputation is inadmissible where the defendant has not placed those particular aspects in issue.

REFERENCE FOR POINTS IN HEADNOTE
81 Am Jur 2d, Witnesses §§ 563-568.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *James J. Gregart,* Prosecuting Attorney, and *Robert C. Beck,* Assistant Prosecuting Attorney, for the people.

*Marovich & Stroba* (by *Milton J. Marovich),* for defendant on appeal.

Before: R. M. Maher, P.J., and MacKenzie and M. B. Breighner,* JJ.

Per Curiam. Defendant was convicted by a jury of delivery of a controlled substance, MCL 335.341(1)(a); MSA 18.1070(41)(1)(a), superseded by 1978 PA 368. Sentenced to from 10 to 20 years imprisonment, he appeals as of right.

This was defendant's second conviction for the same offense. His first conviction was reversed by the Supreme Court. *People v Johnson,* 409 Mich 552; 297 NW2d 115 (1980). The testimony at the original trial showed that the police had used an informant, Cora Pierce, to arrange a drug transaction between defendant and Officer Dan Weston, an undercover agent. Shortly after defendant sold Weston seven "dime bags" of heroin for $50 he was arrested for delivery of a controlled substance. On direct examination of Weston, the prosecutor inquired into defendant's reputation in the drug community. Weston testified that defendant was known as a "big man" in the drug community who "took care of business with an iron fist". On review, the Supreme Court ruled that this testimony injected reversible error into the trial. The testimony presented character evidence of the defendant, namely, that he was reputed to be a big drug dealer who used violence to control his business. The defendant, however, had not placed in issue

---

* Circuit judge, sitting on the Court of Appeals by assignment.

these particular aspects of his reputation. Noting that "the power of the state to rebut the character of defendant is limited to the trait or traits introduced by the defendant", 409 Mich 561, the Court ruled that the character evidence was inadmissible. The Court further held that the error was not harmless and reversed defendant's conviction.

At the second trial, Officer Weston once again testified. The prosecutor, in his direct examination of Weston, inquired into the police practice of using informants in drug investigations. At one point, the prosecutor and Weston engaged in the following colloquy:

"*Q.* Now, in regards to Cora Pierce, you say that she had three cases pending, drug cases. You know, how is an evaluation made as this person we are going to allow to be an informant, a recommendation of some sort versus the person that that informant introduces to, my question is, how is that evaluation made? They both do the same thing, they're both as guilty?

"*A.* I see what you mean. Well, the evaluation is made by the—the evaluation is made by the police community, the officer in the unit. And sort of the way that I think of it is it is like a balance beam scale and the best way I can explain is to give a couple of examples, if I could.

"If you have a person that I would consider rightfully or wrongfully, it goes a lot on what the officer's own perception of the people that they're dealing with is. If you have a person that I consider to be a street level dealer, that is not—in other words, not a major dealer at all versus a person that is in my estimation, a higher level dealer, I sort of think of it in the terms of a ladder, at a higher rung on the ladder. Even though if it is the same crime, if this person delivers $10.00 worth of heroin or this person delivers $10.00 worth of heroin, it has a greater effect on the drug community or the people. The distribution of the drugs.

"If you are able to arrest and take off the street the

person that is at the higher level, therefore in that situation, we would be willing to consider the person for an informant if they were going to be the conduit for us to a higher person.

"Also, if you had people that were on the same level, if we had one person and only one person and we arrested that person, it would be over with. We would have no other place to go whereas this one person, even though they may be on the same level, if they could then make introductions to 5 or 10 of 150 other individuals of the same level, we would be willing to consider dropping charges on this person in order to be able to eliminate a much larger number of people.

"But what we would not do is make a recommendation on someone that, whatever level we are talking about, that would only do one other person at the same level they are because we have not accomplished anything. We have just traded one person for another person.

"As far as having an impact and effect on the drugs into the community, that has no effect. So it has to have a bearing on the impact or the amount of drugs that we are cutting off from coming into the community."

The defendant objected to this testimony and moved for a mistrial. The court denied the motion.

On appeal, the defendant argues that the testimony reproduced above was inadmissible because it implies that defendant was reputed to be a major drug dealer.

We note at the outset that defendant did not place in issue his reputation in the drug community. Thus, the people could not introduce evidence showing that defendant was reputed to be a major drug dealer. *People v Johnson, supra.* After carefully reviewing Weston's testimony, we are convinced that he did suggest that defendant had such a reputation. Weston began by emphasizing the utility of a "street level" informant who can be

a "conduit" to a major dealer. In so doing, Weston insinuated that defendant was such a dealer. Of course, he then pointed out that a street level informant who can lead the police to a number of other dealers on the same level is also valuable. Theoretically, Cora Pierce could have been such an informant and defendant could have been a street level dealer. But a mention of this possibility is not enough to dispel the initial suggestion that the police are primarily interested in major dealers and that defendant is one of these dealers. Weston's testimony was inadmissible character evidence.

Admission of this evidence was not harmless error. The trial came down to a credibility battle between Officer Weston and defendant. The state's portrayal of defendant as a "bad man" could only damage defendant's credibility. Defendant was denied a fair trial.

Reversed and remanded.