# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DANL AUBREY KEIGLEY,

        Defendant-Appellant.

UNPUBLISHED
July 3, 2018

No. 336887
Ottawa Circuit Court
LC No. 16-040126-FC

Before: RONAYNE KRAUSE, P.J., and MARKEY and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by right his convictions by a jury of two counts of first-degree child abuse, MCL 750.136b(2), arising out of injuries suffered by the victim, his girlfriend's then three-year-old son NEM, in November and December of 2015. It appears that his girlfriend entered a nolo contendere plea to one count of first-degree child abuse, arising out of the same facts; she waived her Fifth Amendment rights and testified in this matter. The trial court sentenced defendant to concurrent terms of 180 to 360 months' imprisonment, with credit for 63 days served. We affirm.

Defendant brought NEM to the local hospital in Holland, Michigan, on the night of December 18, 2015, where NEM was found to have severe injuries. Among other concerns, NEM was unresponsive and had a body temperature of 94.3°F; a CT scan showed a large subdural hematoma with blood covering the entire right side of his brain severe enough to have caused a 6 millimeter shift in the center of his brain; and he was also discovered to have some fractures. He was transferred to the Helen DeVos Children's Hospital in Grand Rapids. Dr. Debra Simms, a child abuse pediatrician with extensive experience and qualifications, required a four and a half hour initial consultation to document all of NEM's various internal and external injuries, some of which had partially healed. Defendant contended that NEM had fallen down, which Dr. Simms concluded was simply not violent enough to explain NEM's injuries. In addition, a photograph taken a month previously, when shown to Dr. Simms, initially suggested to her that it "was some kind of Halloween stunt" because NEM's depicted injuries reflected the most severely battered child she had ever seen survive the experience. While there was a certain amount of conflicting testimony, a significant portion of it indicated that defendant had a lengthy history of beating NEM, while he contended that he simply "roughhoused" and at the most may have been a somewhat overzealous disciplinarian. The jury clearly did not agree.

-1-

Defendant first argues that he was denied a fair trial by the admission of evidence that NEM had prior injuries and by Dr. Simms's testimony that she believed NEM may possibly have been "tortured." We disagree.

The trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo; it is necessarily an abuse of discretion to admit legally inadmissible evidence. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010).

Dr. Simms made it clear during her testimony that she had no way to know when or how the prior injuries occurred. However, she also testified extensively to how rapidly NEM healed from the injuries that had clearly just been inflicted. Even if there was no direct evidence of how recently the healing injuries had been inflicted, it is strongly inferred that they must have been inflicted recently—in other words, well within the timeframe of defendant's presence in NEM's life. By *everyone's* testimony, nobody other than defendant physically disciplined NEM. The gravamen of defendant's defense regarding the charge arising out of the November injuries was that NEM sustained his injuries falling down the stairs. Critically, the older injuries were *healing*, not *healed*. The injuries in the process of healing were highly relevant to the prosecution's case that NEM's apparent injuries in November were real injuries rather than stage makeup, especially in light of defendant's implication that the person who provided the photograph may have been prevaricating. While the evidence was clearly prejudicial, as most evidence is, it was not unduly prejudicial in light of the nature of the allegations and its relevance to the charges.

Dr. Simms confirmed that "torture" was a recognized medical reference code. According to the 2018 edition of the International Classification of Diseases, Tenth Revision, Clinical Modification (ICD-10-CM)[1], "victim of torture" is code Z65.4, under "victim of crime and terrorism," which is under "problems related to other psychosocial circumstances," which is under "persons with potential health hazards related to socioeconomic and psychosocial circumstances," which is under Chapter 21, "factors influencing health status and contact with health services." Chapter 21 notes that "Z codes represent reasons for encounters" and do not stand alone, and, *inter alia*, might arise "when some circumstance or problem is present which influences the person's health status but is not in itself a current illness or injury." Defendant offers no reason why Dr. Simms needed to be a psychiatrist to make the diagnosis other than a vague reference to "the literature," and in any event, Dr. Simms noted that she had involved a child psychiatrist and psychologist in her medical team.

The word "torture" certainly carries emotional weight. However, in light of Dr. Simms's testimony that NEM was the most battered living child she had ever seen in twenty years of specializing in child abuse and was enough to give her nightmares, it does not seem particularly inappropriate or even noticeable. The trial court properly held that whether the word was admissible should turn on whether it was an actual medical diagnosis, which the testimony emphasized it was, as opposed to a personal opinion. Defendant raises MRE 404(b), but we are

---

[1] Available at https://www.cdc.gov/nchs/icd/icd10cm.htm

at a loss to understand its relevance here. The diagnosis of possible torture was directly relevant to whether defendant committed first-degree child abuse, and in the context of the rest of the case, it does not seem significantly more prejudicial than probative.

Defendant also contends that he was unfairly prejudiced by the admission of the photograph of NEM's injuries from November, arguing that it was unnecessary and gruesome. We disagree.

NEM's condition in December, in other words relevant to the *second* charge of first-degree child abuse, was well documented. The photograph was the only direct evidence of NEM's condition in November; in other words, relevant to the *first* charge of first-degree child abuse. First-degree child abuse requires proof that a defendant "knowingly or intentionally cause[d] serious physical or serious mental harm to a child." MCL 750.136b(2). In view of the evidence that an active child is quite simply expected to suffer some bruising, and possibly even some broken bones, the sheer severity of NEM's injuries is highly and directly relevant to whether he did actually suffer first-degree child abuse, as opposed to, say, mere grossly incompetent parenting or overzealous discipline. Defendant's apparent theory of the case was that NEM had in fact been injured in that time frame, but was injured falling down the stairs or falling off some shelving, and did not appear to be in serious pain. The medical evidence of healing fractures suggested otherwise; the photograph depicting how he actually looked was enormously important evidence that more than merely suggested otherwise.

Defendant attempts to argue that a gruesome photograph is really not necessary to establish any element of the charges in this case. Defendant argues that in a case where the only issue was whether a defendant had participated in a murder, or whether it was first- or second-degree murder, showing the jury brutal photographs of the victims was probative of nothing relevant and tended to inflame and distract the jurors. *People v Wallach*, 110 Mich App 37, 63-67; 312 NW2d 387 (1981), vacated and remanded on other grounds 417 Mich 937 (1983). That case and defendant's argument are wholly irrelevant. The photograph here was directly necessary to establish the essential elements of one of the charged crimes, as well as to establish NEM's condition in a way that could not adequately be described. While certainly highly prejudicial, its probative value was not substantially outweighed by the danger of unfair prejudice, and the fact that it was gruesome does not automatically require its exclusion, even if it could be adequately described through testimony. *People v Mills*, 450 Mich 61, 76-78; 76; 537 NW2d 909 (1995), modified on other grounds 450 Mich 1212 (1995).

Defendant next argues that offense variables (OV) 7 and 13 were improperly scored. As the trial court scored defendant's guidelines, he had a total PRV score of 10, or level C, and a total OV score of 120, or level VI. Pursuant to MCL 777.62 for a class A felony, his minimum guidelines range was therefore 135-225 months. Defendant correctly notes that if OV 7 and OV 13 were scored at zero points, his total OV score would be 45, or level III, for a minimum guidelines range of 81-135 months. The trial court imposed a minimum sentence of 180 months. We conclude that the guidelines were properly scored.

Although the statutory sentencing guidelines are strictly advisory, trial courts are nevertheless required to consult that advice. *People v Steanhouse (Steanhouse I)*, 500 Mich 453, 470; 902 NW2d 327 (2017). The trial court's factual findings in scoring offense variables "are

reviewed for clear error and must be supported by a preponderance of the evidence," and whether those facts justify a particular score is reviewed de novo. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). The trial court may make reasonable inferences from the record. *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), aff'd on other grounds 495 Mich 33 (2014). The reason the guidelines are advisory is because of the difficulty in distinguishing between judge-found facts and facts sufficiently admitted by a defendant or found by a jury. *Steanhouse I*, 500 Mich at 468. Consequently, the only ultimate review is whether the sentence imposed is "proportionate" and justified under the circumstances of the case, which is not strictly dictated by whether it departs from the guidelines. *Id*. at 472-475. The reasonableness of a trial court's sentence is reviewed for an abuse of discretion. *Steanhouse I*, 500 Mich at 471. "Generally, sentences falling within the minimum sentencing guidelines range are presumptively proportionate." *People v Steanhouse (On Remand) (Steanhouse II)*, 322 Mich App 233, 238; 911 NW2d 253 (2017).

Under OV 7, the trial court should score 50 points if a "victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MCL 777.37(1)(a). Dr. Simms's testimony that in her twenty years of specialized practice in child abuse, NEM was the most severely battered child she had ever seen survive would to establish, at a minimum, "excessive brutality" or "similarly egregious conduct," rendering irrelevant defendant's argument to the effect that sadism and torture tend to be for the personal gratification of the person inflicting it. Defendant's argument that he merely engaged in unthinking excessive discipline rather than "conduct *designed* to" substantially increase NEM's fear and anxiety is patently ridiculous. It takes absolutely no expertise to appreciate that the kind of crude physical discipline that results in children sustaining injuries as seen in this case was nothing but an attempt to rule by fear. OV 7 was properly scored at 50 points.

Under OV 13, the trial court should score 25 points if, in relevant part, the sentencing "offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). This includes the sentencing offense. MCL 777.43(2)(a). Defendant was convicted of two crimes against NEM; therefore, the question is whether the trial court properly found a third. The prosecutor argued that there were two instances of first-degree abuse on the same day in November, separated by a nap. The trial court reasoned that there was a third offense because Dr. Simms's medical findings indicated that some injuries had occurred in between the November and the December incidents.

The trial court reviewed a number of text messages between defendant and his girlfriend, that reflected a pattern of knowingly and intentionally beating NEM by defendant and possibly also his girlfriend. Defendant's proclamations that it was "just talk" is ludicrous in light of the injuries defendant is *known* to have inflicted on NEM. The extensive testimony that NEM "bruised easily," despite an extensive battery of medical tests finding no reason for that to be the case, strongly suggests that NEM was sustaining beatings, and the testimony also strongly suggested that nobody other than defendant would have caused them. There was also testimony that defendant could be heard beating the child and that he marched NEM to the bathroom while hitting him with a belt. Finally, there was evidence that NEM had suffered serious long-term trauma reflected by his delayed growth and speech and his serious reactions to touch. To argue

that there were not at least 3 felonies committed against NEM by defendant within the requisite time period is absurd. Consequently, the trial court's scoring of OV 13 at 25 points is proper.

Defendant raises a number of additional arguments in a Standard 4 brief. First, he argues that trial counsel was ineffective for failing to request forensic or independent medical testing that would have rebutted Dr. Simms's opinions. We disagree.

Defendant not only failed to move for a new trial or evidentiary hearing in the trial court, he affirmatively declined the trial court's explicit inquiry into whether defendant wished one. This issue is unpreserved. *People v Sabin*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Consequently, our review of defendant's assertions that he received ineffective assistance of counsel is reviewed only for mistakes apparent from the record. *People v Johnson*, 315 Mich App 163, 174; 889 NW2d 513 (2016). Counsel will not be evaluated on the basis of hindsight, *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009), and defendant has the burden of overcoming the presumption of effective performance and demonstrating that the outcome of the proceedings would have differed or that the proceedings were fundamentally unfair. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

Defendant's argument presumes that an independent medical examination *would* have rebutted Dr. Simms's conclusions. Defendant offers no reason to suspect that such a presumption is accurate. Furthermore, Dr. Simms provided the medical documentation underlying her conclusions in the form of multiple images of the actual injuries NEM suffered. Defendant does not explain what, if anything, another medical expert would have found differently, or why. In short, defendant provides nothing to indicate that trial counsel's decision not to pursue that line of investigation was at all unreasonable. Consequently, defendant has not overcome the burden of showing any deficient performance or likely alternative outcome.

Defendant also argues that either the trial court erred or counsel was ineffective for failing to give or request a jury instruction on the lesser offense of second-degree child abuse. We disagree. First, the trial court is generally not required to *sua sponte* instruct the jury on lesser included offenses in the absence of a request to do so. *People v Johnson*, 409 Mich 552, 562; 297 NW2d 115 (1980). Second, an all-or-nothing strategy is a gamble, but not an inherently unsound one. Defendant merely second-guesses a perfectly reasonable strategy of hoping to create enough reasonable doubt about one element of a crime that the jury is forced to acquit altogether. Indeed, had the jury believed that defendant merely acted recklessly, as he asserts, the strategy defense counsel actually pursued would have resulted in defendant not being convicted at all. The fact that a strategy did not work does not make it unsound. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).

Defendant next argues that his convictions must be vacated because there was insufficient evidence that he harmed NEM at all, or that he did so with the requisite specific intent to seriously injure him. We are not certain what defendant is requesting. However, we choose to give defendant the benefit of the doubt and construe this as a challenge to the sufficiency of the evidence, which need not be preserved below. *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). A challenge to the sufficiency of the evidence in a criminal matter is reviewed de novo, viewing "the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been

proved beyond a reasonable doubt." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).

The gravamen of defendant's argument is that there is no evidence that he intended to cause serious harm to NEM. This is *obviously* belied by the record. Dr. Simms testified that NEM was the most severely battered child she had seen survive the experience in 20 years of specializing in child abuse; it would be entirely reasonable for the trier of fact to infer that at some point, continuing to beat a child absolutely must cross the line from recklessness into intentional harm, and that NEM's condition both after the November and the December incidents clearly showed that the line had been crossed. There was considerable evidence that NEM could not possibly have wound up in such a state absent intentional harm from an adult. There was considerable evidence that defendant was the only person who could have done so, and indeed that defendant had in fact done so. This Court views the evidence in the light most favorable to the outcome reached by the trier of fact, not the light most favorable to alternatives advanced by a defendant. The trier of fact could reasonably and rationally have found that defendant intended to severely harm NEM.

Defendant next argues that he was deprived of a fair trial because Dr. Simms gave an opinion about the ultimate issue of his guilt or innocence, and she vouched for the credibility of another witness. We disagree.

As an initial matter, defendant is simply incorrect in asserting that experts are flatly prohibited from testifying to ultimate facts at issue in criminal matters. *People v Smith*, 425 Mich 98, 106; 387 NW2d 814 (1986). More accurately, expert witnesses may not render a legal conclusion about the commission, or not, of a particular crime. *People v Drossart*, 99 Mich App 66, 75, 79-80; 297 NW2d 863 (1980). However, an expert may "testify to the facts relevant to the applicable legal principles" or provide an opinion within the scope of their expertise that happens to coincide with an ultimate issue. *Id*. at 77, 80-82. Testimony from an expert in the form of a conclusion that directly establishes an element of a charged crime is perfectly admissible if it assists the trier of fact and is based on objective facts obtained from a medical examination. *People v Swartz*, 171 Mich App 364, 376-378; 429 NW2d 905 (1988).

While an expert may not directly vouch for a victim's truthfulness, an expert may render an opinion about whether objective evidence found by the expert is or is not consistent with any particular fact at issue. *People v James*, 182 Mich App 295, 297-298; 451 NW2d 611 (1990). Witnesses are permitted to render opinions, that, if believed by the jury, would establish a defendant's guilt, so long as those opinions are rationally based on the witness's observations, the witness is better able to make the determination from the raw data than the jury, and the opinion is not an actual statement about the defendant's guilt or innocence of the charged offense. *People v Fomby*, 300 Mich 46, 48-53; 831 NW2d 887 (2013). It simply stands to reason that testimony with *no* bearing on a defendant's guilt or innocence would be inadmissible pursuant to MRE 402.

Dr. Simms did not testify that any particular crime had been committed, and it was clear that she was rendering a medical diagnosis rather than a legal conclusion. Her medical diagnosis of abuse was clearly based on objective observations within her area of expertise. Likewise, her determinations that falling down the stairs or falling from a potty or from a child's standing

height could not possibly cause the manifested injuries certainly has some bearing on defendant's credibility, but led to an ultimate medical diagnosis of "unexplained." It is entirely within a medical expert's competence to evaluate whether a particular accident or explanation could produce given injuries. She stated that she did not know what did happen or how old the prior injuries were. Her opinions whether NEM's injuries were or were not consistent with anything defendant or his girlfriend told her is not a statement about truthfulness at all, but rather helpful expert conclusions about the nature of NEM's injuries. While highly relevant to the ultimate issues and defendant's credibility, Dr. Simms did not render impermissible conclusions directly opining whether defendant, or any other witness, was truthful or whether first-degree child abuse had legally occurred.

Defendant next argues that the trial court should have inquired into his dissatisfaction with trial counsel. We note that the trial court *did* inquire into defendant's dissatisfaction with trial counsel, which he appears to have brought to the trial court's attention in at least one letter. As noted, the trial court explicitly asked defendant whether he wished an evidentiary hearing to look into the adequacy of trial counsel's performance; defendant declined. Thus, in contrast to merely failing to preserve a right, defendant intentionally relinquished it, constituting a waiver. *People v Vaughn*, 491 Mich 642, 663; 821 NW2d 288 (2012). Generally, one may not seek review of a waived right. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). Additionally, defendant's argument borders on the incomprehensible. Defendant correctly notes that a trial court is obligated to look into an apparent breakdown in the attorney-client relationship. *People v Bass*, 88 Mich App 793, 802; 279 NW2d 551 (1979). The trial court carried out that duty, however, and certainly is under no obligation to refuse to take defendant at his word.

Finally, defendant argues that certain CPS reports disclosed during discovery revealed that defendant's girlfriend had a prior history of abusing and neglecting NEM prior to their relationship, and witnesses from that time period would have impeached her and exonerated defendant.[2] Defendant has provided copies of what he alleges to be CPS reports that were provided during discovery. While expanding the lower court record is generally impermissible, this is functionally a request to remand for a proper hearing on ineffective assistance based on an alleged failure to follow up on the attached evidence. Particularly in view of defendant's *in propria persona* status for this issue, we have chosen to review it.

There are three CPS history entries preceding the incidents at issue in this matter. We have scrutinized them, and they are simply descriptions tending to reflect that defendant's girlfriend was a neglectful parent, addicted to drugs, failing to care for the children, and leaving the children in the care of others with no business being responsible for children. These statements are all consistent with the trial testimony, which amply showed that NEM was being neglected well before defendant became a figure in his life. Indeed, defendant's girlfriend never

---

[2] Defendant also argues that the trial court made an affirmative finding at some point that trial counsel was not ineffective, but we have not found any statement by the trial court to that effect, and defendant does not explain where the trial court allegedly did so.

claimed otherwise. However, they reflect neglect, not any kind of assault or battery against the children. The remaining entries are all subsequent to the December 18, 2015, incident, and they note that she inconsistently claimed to have been at work and to have been at home, and that she either physically abused NEM *or* failed to provide him with adequate supervision. Defendant mentions someone called Edgar Saurez, but no such name is apparent in the evidence provided by defendant, and defendant does not explain who Mr. Saurez is or of what exactly his testimony would consist.

The evidence that NEM was, in fact, subjected to first-degree child abuse from *someone* is overwhelming. Consequently, the real *credibility* issue concerns only who committed the abuse. There were a limited number of possible perpetrators. Defendant implied at trial that either his girlfriend or another housemate might have done so. However, the girlfriend, NEM's mother, testified against defendant. It would also be irrelevant because there is clear testimony that only defendant was present when NEM must have sustained his injuries on December 18. Defendant implied that his girlfriend had made up a story about NEM falling down the stairs, but again, nothing in the evidence presented would tend to undermine her credibility in general or suggest that she had any tendency to beat NEM, and the jury chose to believe her. Jurors are the judges of credibility. *People v Musser*, 494 Mich 337, 348-349; 835 NW2d 319 (2013).

There is no basis for this Court to grant defendant a new trial or to remand for a hearing on the effectiveness of his trial counsel.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Jane E. Markey
/s/ Michael J. Riordan